JANICE R. NIETING v. HENRY R. BLONDELL, JR.,
AND ANOTHER.
STATE, THIRD-PARTY DEFENDANT.

235 N. W. 2d 597.

October 31, 1975—No. 45361.

*Arthur, Chapman & McDonough, Lommen & Cole,* and *John P. Lommen,* for appellants.

*Warren Spannaus,* Attorney General, *Peter W. Sipkins,* Solicitor General, and *John R. Murphy,* Assistant Attorney General, for respondent state.

*DeParcq, Anderson, Perl & Hunegs* and *Richard G. Hunegs,* for respondent plaintiff.

*Gordon W. Shumaker, Adrian E. Herbst,* and *Paul D. Tierney,* for Minnesota Trial Lawyers Association, amicus curiae, seeking reversal.

MacLAUGHLIN, JUSTICE.

Defendants appeal from an order of the district court dismissing their third-party complaint against the State of Minnesota on the ground that the state is immune from suit. For reasons stated herein we affirm as to this case, but establish a new rule of law in Minnesota for cases arising on and after August 1, 1976.

This case arises from a multiple-vehicle collision involving a tractor-trailer unit and seven automobiles on Interstate Highway No. 94 (I-94) near Victoria Street in St. Paul, Minnesota, on April 6, 1972. The tractor-trailer unit had traveled through the chain-link fence which at the time of the accident separated the eastbound and westbound lanes of I-94 and collided with several automobiles.

Plaintiff, Janice R. Nieting, the driver of one of the vehicles involved in the accident, instituted this suit against defendants Henry R. Blondell, Jr., the driver of the tractor-trailer, and Sawyer Transportation, Inc., the owner of the tractor-trailer, for injuries sustained in the accident. Defendants impleaded the Michelin Tire Corporation based on the theory of negligence, warranty, and strict liability in tort, alleging that the tires on the truck, which had been manufactured by Michelin, were defective and had caused the accident. Defendants Blondell and Sawyer also filed a notice of claim with the State Claims Commission against the State of Minnesota pursuant to Minn. St. 3.66 et seq.,[1] alleging that the cement and chain-link fence median barriers were negligently designed, constructed, and maintained and were thus unsafe and hazardous to the public. The State Claims Commission, at the request of defendants, did not act on the claim. Defendants then moved for leave to file a third-party complaint against the State of Minnesota. The district court granted defendants' motion. Third-party defendant State of Minnesota then moved for dismissal of the third-party complaint. Because of the long-established tort immunity of the state, the district court granted the motion for dismissal, and this appeal followed.[2]

---

[1] Minn. St. 3.66 provides: "A commission to hear and adjudicate claims against the state is hereby created. Such commission shall be known as the state claims commission. The commission shall consist of six members, three of whom shall be senators appointed by the committee on committees and three shall be members of the house of representatives appointed by the speaker of the house. The commission shall be appointed upon the passage of sections 3.66 to 3.85 and any vacancy occurring shall be filled by the appointing power."

[2] The trial court, in an excellent memorandum, stated in part as follows: "* * * Had the issue been one of first impression, this Court would not have hesitated to hold that good reason and sound policy considerations place the State in no different position from that of any other person or legal entity with respect to tort liability from harm caused by the acts or omissions of its employees or others [for which] it would be legally responsible but for its asserted immunity from suit."

The sole issue for our decision is whether this court should abolish the tort immunity of the State of Minnesota. The doctrine of sovereign immunity is often associated with the maxim that "the King can do no wrong." Blackstone has attributed the maxim to the royal prerogative which he defines as "that special pre-eminence which the King hath over and above all other persons, and out of the course of the common law, in right of his royal dignity." According to Blackstone, "[t]he law ascribes to the king the attribute of sovereignty." The King is "sovereign and independent" and "owes no kind of subjection to any other potentate upon earth. Hence it is, that no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him * * * [f]or all jurisdiction implies superiority of power." I Blackstone, Commentaries, Book I, § 339. Edwin M. Borchard, in the first of several articles on government liability in tort, observed that—

"[n]othing seems more clear than that this immunity of the King from the jurisdiction of the King's courts was purely personal. How it came to be applied in the United States of America, where the prerogative is unknown, is one of the mysteries of legal evolution."

Borchard, *Government Liability in Tort*, 34 Yale L. J. 1, 4. See, also, by the same author, *Governmental Responsibility in Tort VI*, 36 Yale L. J. 1; *Governmental Responsibility in Tort VII*, 28 Col. L. Rev. 577; and *Theories of Governmental Responsibility in Tort*, 28 Col. L. Rev. 734.

There is no question that the rule of sovereign immunity as it exists today originated with the courts. Its origins may be traced to an English case, Russell v. The Men of Devon, 100 Eng. Rep. 359, 2 T. R. 667 (1788). The rule was transported across the Atlantic to the United States where it has been perpetuated in a long line of cases beginning with Mower v. Leicester, 9 Mass. 247 (1812). In that case, the court denied recovery on the authority of "Men of Devon."[3]

---

[3] For a summary of the facts of Russell v. The Men of Devon, 100 Eng.

We recognized the sovereign immunity of the State of Minnesota as early as 1877 in St. Paul & Chicago Ry. Co. v. Brown, 24 Minn. 517 (1877).[4] That case involved an action "virtually against the state" to determine the title to certain land. We noted without citing authority that the state is exempt "from actions by its citizens," stating that the exemption "is not based on any constitutional provision, but merely on grounds of public policy." 24 Minn. 574. And, in 1886, in Sanborn v. City of Minneapolis, 35 Minn. 314, 29 N. W. 126 (1886), we stated that "[t]he state cannot be subjected to the jurisdiction of the courts, nor be compelled to defend in them." 35 Minn. 318, 29 N. W. 127.

In Berman v. Minnesota State Agricultural Society, 93 Minn. 125, 127, 100 N. W. 732 (1904), an action to recover damages for the wrongful arrest of a person visting the state fairgrounds, we observed that "it has been uniformly held that a suit by an individual cannot be maintained against a sovereign state without its consent." And, by 1970, the rule that the State of Minnesota cannot be sued in a tort action without its consent was so well established that it was followed without citation to controlling authorities. Johnson v. Callisto, 287 Minn. 61, 176 N. W. 2d 754 (1970).

While this history clearly indicates that the doctrine of sovereign immunity was originally court-made, it has been argued that today the tort immunity of the state has been established by the legislature. This argument is based on the fact that the legislature has created a State Claims Commission,[5] has provided for the payment of the premiums of insurance on state-

---

Rep. 359, 2 T. R. 667 (1788), and Mower v. Leicester, 9 Mass. 247 (1812), see Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 281, 118 N. W. 2d 795, 796 (1962).

[4] For a discussion of the history of the immunity of local governmental units, see Spanel v. Mounds View School Dist. No. 621, 264 Minn, 279, 282, 118 N. W. 2d 795, 797.

[5] Minn. St. 3.66 et seq.

owned vehicles,[6] and has waived its immunity in other areas,[7] while at the same time retaining tort immunity. We are urged to interpret these legislative actions as an affirmative decision by the legislature to retain tort immunity. However, we do not believe this to be the case. What has been cited is a series of sporadic statutes, each operating in a separate area in which the legislature has modified the state's governmental immunity, but which do not, in our judgment, support the argument that the legislature has established a doctrine of state tort immunity. Therefore, it is this court's duty and prerogative to determine whether it should adhere to its own rule of tort immunity for the State of Minnesota. See, Muskopf v. Corning Hospital Dist. 55 Cal. 2d 211, 11 Cal. Rptr. 89, 359 P. 2d 457 (1961).[8] The doctrine of state tort immunity is a creature of the judiciary and not the legislature, and what we have created, we may abolish.

The question of the fairness of the doctrine of sovereign immunity has been presented to us previously, and we have found it wanting. In Spanel v. Mounds View School Dist. No. 621, 264 Minn. 279, 118 N. W. 2d 795 (1962), we indicated our intention to abolish sovereign immunity as a defense with respect to tort claims against school districts, municipal corporations, and other subdivisions of government on which immunity had been conferred by judicial action. The legislature responded by enacting Minn. St. c. 466, which abolished the tort immunity of local governmental units. Spanel did not, however, abolish the tort immunity of the state. Later, in 1970, in Johnson v. Callisto, *supra*,

---

[6] Minn. St. 15.31.

[7] For example, Minn. St. 559.013, adverse claims to real estate; § 582.13, boundary line cases, mortgage foreclosure, or other liens, quiet title actions; § 558.32, partition action; §§ 508.13, 508.16, land registration; § 284.08, tax forfeited land; § 161.34, trunk highway contracts; § 3.751, contract claims.

[8] See, also, Willis v. Dept. of Conservation and Economic Development, 55 N. J. 534, 264 A. 2d 34 (1970), where the New Jersey Supreme Court abolished that state's tort immunity despite the fact that the legislature had created a State Claims Commission.

we were again asked to abolish the doctrine as it applied to the state. We declined, saying that "if there is to be a change, it should come about by legislation which would be based upon findings warranting it and which would provide for procedures and limits of liability, as was done in the enactment of Minn. St. c. 466 subsequent to the Spanel case." 287 Minn. 65, 176 N. W. 2d 757.

In the 5 years that have elapsed since Johnson v. Callisto, *supra,* the legislature has failed to proceed to alleviate the hardships created by the sovereign immunity rule. We have therefore elected to re-examine the question at this time.

The doctrine of sovereign immunity is an exception to the fundamental concept of tort law that liability follows tortious conduct and that individuals and corporations are responsible for the acts of their employees acting in the course of their employment. We are aware of no substantial reasons, and none have been called to our attention, which support the continuation of this exception to the well-established principles of tort law. And we will certainly not retain the doctrine on the basis of stare decisis alone.

"* * * [W]hen a rule, after it has been tested by experience, has been found to be inconsistent with the sense of justice or with the social welfare, there should be less hesitation in frank avowal and full abandonment." Cardozo, *Selected Writings of Benjamin Nathan Cardozo,* p. 107, 152 (1947).

The reasons for the creation of the state's tort immunity are now obscured. As we said in Spanel, 264 Minn. 290, 118 N. W. 2d 802:

"* * * [I]ts genesis was accidental and was characterized by expediency, and * * * its continuation has stemmed from inertia."

Because no compelling reasons have been presented in support of its continued existence, we have concluded that the time has come for the abandonment of the rule. Several other courts faced

with this problem have reached the same conclusion. In Muskopf v. Corning Hospital Dist. 55 Cal. 2d 211, 216, 11 Cal. Rptr. 89, 92, 359 P. 2d 457, 460 (1961), Mr. Chief Justice Traynor, speaking for the California Supreme Court, said:

"The rule of governmental immunity for tort is an anachronism, without rational basis, and has existed only by the force of inertia. * * * It has been judicially abolished in other jurisdictions. [Citations omitted.]

"None of the reasons for its continuance can withstand analysis. No one defends total governmental immunity. In fact, it does not exist. It has become riddled with exceptions, both legislative * * * and judicial * * *, and the exceptions operate so illogically as to cause serious inequity."

Mr. Chief Justice Weintraub, speaking for the New Jersey Supreme Court in Willis v. Dept. of Conservation and Economic Development, 55 N. J. 534, 537, 264 A. 2d 34, 36 (1970), said:

"It is plainly unjust to refuse relief to persons injured by the wrongful conduct of the State. No one seems to defend that refusal as fair. There has been a steady movement away from immunity. In some jurisdictions, the change has been achieved by judicial decision [citations omitted], and in others by statutes which consented to suit in the courts or provided for relief before an administrative or legislative body. * * * The Congress, too, has authorized tort claims against the United States. 28 U.S.C. §§ 2674, 2680."

The modern trend in this country supports our decision to abolish governmental immunity. A large number of states have abolished the defense of sovereign immunity as it applies to local governmental units. Many of the states, including Minnesota, have done so judicially,[9] although some states have done so by

---

[9] E. g., Spanel v. Mounds View School Dist. No. 621, footnote 4, *supra*; City of Fairbanks v. Schaible, 375 P. 2d 201 (Alaska 1962); Veach v. City of Phoenix, 102 Ariz. 195, 427 P. 2d 335 (1967); Smith v. State, 93 Idaho 795, 473 P. 2d 937 (1970); Molitor v. Kaneland Community Unit Dist. No.

statute.[10]

A significan number of states have also abolished the tort immunity of the state itself. While most of these states have done so by statute,[11] ten states[12] and the District of Colum-

302, 18 Ill. 2d 11, 163 N. E. 2d 89 (1959); Campbell v. State, 259 Ind. 55, 284 N. E. 2d 733 (1972); Haney v. City of Lexington, 386 S. W. 2d 738 (Ky. 1964); Brown v. City of Omaha, 183 Neb. 430, 160 N. W. 2d 805 (1968); Johnson v. Municipal University of Omaha, 184 Neb. 512, 169 N. W. 2d 286 (1969); Rice v. Clark County, 79 Nev. 253, 382 P. 2d 605 (1963); Walsh v. Clark County School Dist. 82 Nev. 414, 419 P. 2d 774 (1966); Becker v. Beaudoin, 106 R. I. 562, 261 A. 2d 896 (1970); Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N. W. 2d 618 (1962); Long v. City of Weirton, 214 S. E. 2d 832 (W. Va. 1975); Merrill v. City of Manchester, 114 N. H. 722, 332 A. 2d 378 (1974). For a more detailed list, see Restatement, Torts 2d, Tentative Draft No. 19, § 895A.

[10] Iowa Code § 613A.1 et seq. (1975); N. Y. Court of Claims Act, § 8 (McKinney 1963). This statute was enacted following the decision of the New York Court of Appeals in Bernardine v. City of New York, 294 N. Y. 361, 62 N. E. 2d 604, 161 A. L. R. 364 (1945), which construed a statute as having abolished the state's tort immunity. Okla. Stat. tit. 11, § 1751 et seq. (1971); Ore. Rev. Stat. § 30.260 et seq. (1974); Utah Code Ann. § 63-30-1 et seq. (1968); Wash. Rev. Code § 4.96.010 et seq. (1974).

[11] Alaska Stat. § 09.50.250 (1973); Hawaii Rev. Stat. § 662-1 et seq. (1968); Ill. Rev. Stat. c. 37, § 439.8 (1967); Iowa Code § 25A.1 et seq. (1975); Neb. Rev. Stat. § 81-8,209 et seq. (1971); Nev. Rev. Stat. § 41.031 et seq. (1973); N. Y. Court of Claims Act, § 8 (McKinney 1963); Ore. Rev. Stat. § 30.260 et seq. (1974); R. I. Gen. Laws Ann. § 9-31-1 et seq. (Supp. 1974); Utah Code Ann. § 63-30-1 et seq. (1968); Vt. Stat. Ann. tit. 12, § 5601 et seq. (1973); Wash. Rev. Code Ann. § 4.92.090 (1974).

[12] Arizona: Stone v. Arizona Highway Comm. 93 Ariz. 384, 381 P. 2d 107 (1963). California: Muskopf v. Corning Hospital Dist. 55 Cal. 2d 211, 11 Cal. Rptr. 89, 359 P. 2d 457 (1961); Lipman v. Brisbane Elementary School Dist. 55 Cal. 2d 230, 11 Cal. Rptr. 97, 359 P. 2d 465 (1961); California presently has a tort claims act, California Government Code, § 810 et seq. (West 1966). Colorado: Evans v. Bd. of County Commrs. 174 Colo. 97, 482 P. 2d 968 (1971); Colorado has since restored immunity by statute with exceptions, Colo. Rev. Stat. Ann. § 24-10-101 et seq. (1973). Idaho: Smith v. State, 93 Idaho 795, 473 P. 2d 937 (1970). Indiana: Campbell v. State, 259 Ind. 55, 284 N. E. 2d 733 (1972). New Jersey: Wil-

bia[13] have abolished immunity judically.

While we are not compelled to follow the example of other courts, we are persuaded by their logic and adopt their conclusion. One of the paramount interests of the members of an organized and civilized society is that they be afforded protection against harm to their persons, properties, and characters. The logical extension of that interest is that, if harm is wrongfully inflicted upon an individual in such a society, he should have an opportunity to obtain a reasonable and adequate remedy against the wrongdoer, either to undo the harm inflicted or to provide compensation therefor. If the state is properly to serve the public interest, it must strive, through its laws, to achieve the goals of protecting the people and of providing them with adequate remedies for injuries wrongfully inflicted upon them. So long as the state fails to do so, it will be functioning in conflict with the public interest and the public good.

We wish to make clear, however, that we are only indicating our disfavor of the immunity rule in the tort area, and our decision should not be interpreted as imposing liability on any governmental body in the exercise of discretionary functions or legislative, judicial, quasi-legislative, and quasi-judicial functions. See, Spanel v. Mounds View School Dist. No. 621, *supra*.

Although we firmly believe that retention of the state's tort immunity no longer serves a useful purpose, we have reluctantly decided to deny relief to the third-party plaintiffs in this case. While it may appear unfair to deprive third-party plaintiffs of their right to litigate the question of the state's liability, we feel that it would be more unjust to deny the State of Minnesota the

lis v. Dept. of Conservation and Economic Development, 55 N. J. 534, 264 A. 2d 34 (1970). New Mexico: Hicks v. New Mexico, 88 N. Mex. 588, 544 P. 2d 1153 (1975). Pennsylvania: Ayala v. Philadelphia Bd. of Public Education, 453 Pa. 584, 305 A. 2d 877 (1973). Kansas: Brown v. Witchita State University, 217 Kan. 279, 540 P. 2d 66 (1975). Wisconsin: Holytz v. City of Milwaukee, 17 Wis. 2d 26, 115 N. W. 2d 618 (1962); but, see, Wis. Stat. § 16.007 (1973).

[13] Spencer v. General Hospital, 425 F. 2d 479 (D. C. Cir. 1969).

right to rely on a defense which was in existence at the time the underlying cause of action arose. This was the result reached in Spanel, and we feel the logic of this approach to be compelling. As we stated in Spanel, 264 Minn. 294, 118 N. W. 2d 804:

"It may appear unfair to deprive the present claimant of his day in court. However, we are of the opinion it would work an even greater injustice to deny defendant * * * a defense on which [it has] a right to rely. We believe that it is more equitable if [local governments] are permitted to plan in advance by securing liability insurance or by creating funds necessary for self-insurance. In addition, provision must be made for routinely and promptly investigating personal injury and other tort claims at the time of their occurrence in order that defendants may marshal and preserve whatever evidence is available for the proper conduct of their defense."

Similarly, in the instant case, we have concluded that we will abolish immunity prospectively so that the legislature may have an opportunity to resolve certain procedural questions which may be presented. Our decision will allow the legislature the opportunity to take affirmative action prior to the elimination of the sovereign immunity defense.

We therefore abolish the tort immunity of the State of Minnesota with respect to tort claims arising on or after August 1, 1976, subject to any appropriate action taken by the legislature.[14] We select that date because enactments of the 1976 Minnesota Legislature will take effect on that day unless otherwise specified.[15]

Affirmed.

---

[14] We have been urged to declare the doctrine of sovereign immunity to be unconstitutional as a violation of due process or equal protection. However, because of our belief that the legislature will recognize the fairness and wisdom of allowing a wrongfully injured party to be compensated for his injuries, we decline to consider these constitutional questions.

[15] Minn. St. 645.02 provides: "Each act, except one making appro-

---

priations, enacted finally at any session of the legislature takes effect on August 1 next following its final enactment, unless a different date is specified in the act. * * *

* * * * *

"Each act takes effect at 12:01 a. m. on the day it becomes effective, unless a different time is specified in the act."