**GREEN–GLO TURF FARMS, INC., et al., Appellants,**

v.

**STATE of Minnesota, Respondent.**

**Douglas P. LAWRENCE, Appellant,**

v.

**STATE of Minnesota, Respondent.**

**Nos. C7–82–520, C9–82–390.**

Supreme Court of Minnesota.

April 27, 1984.

Virgil C. Herrick, Fridley, for appellant Douglas P. Lawrence.

Philip B. Moosbrugger, St. Paul, for appellants Green-Glo Turf Farms, Inc., et al.

Hubert H. Humphrey, III, Atty. Gen., Michael B. Miller, Sp. Asst. Atty. Gen., St. Paul, for respondent.

WAHL, Justice.

The Anoka County District Court entered a summary judgment for respondents in these cases, relying on statutory exceptions to the state's tort liability under the Tort Claims Act, Minn.Stat. § 3.736 (1982). One exception provides immunity from suit for "[a]ny loss caused by the performance or failure to perform a discretionary duty, whether or not the discretion is abused." Minn.Stat. § 3.736, subd. 3(b). The second exception immunizes the state from "[a]ny loss arising out of the construction, operation, or maintenance of the outdoor recreation system, as defined in section 86A.04, * * * except that the state is liable for conduct that would entitle a trespasser to damages against a private person." Minn. Stat. § 3.736, subd. 3(h). Because we hold that appellants are precluded from suing the state under the outdoor recreation system immunity, we do not reach the "discretionary duty" immunity issue.

This case involves claims for damage to appellants' growing crops as a result of flooding allegedly caused by respondent's negligent construction, maintenance and operation of a system of pools in the Carlos Avery Wildlife Management Area (Wildlife Area).

The Wildlife Area is part of Minnesota's outdoor recreation system as defined by Minn.Stat. § 86A.04 (1982). The Department of Natural Resources manages this 20,000-acre tract situated 31 miles north of the Twin Cities. As an area with "a high potential for wildlife production," it is to be developed and managed for "the production of wildlife, for public hunting, fishing, and trapping, and for other compatible outdoor recreational uses." Minn.Stat. § 86A.05, subd. 8(a) (1982).

Part of the Wildlife Area consists of a wildlife sanctuary. The sanctuary contains a series of interconnected pools of between 2- and 3-foot depths which provide the proper environment for the production of underwater plant life, food for aquatic animals and waterfowl. The pools are contained by low dikes of sand fill. All the pools have control structures at the connecting outlets which permit manipulation of the water levels. The levels can be controlled by adding or removing "stop logs" of varying widths which serve to dam up the water in the pools. The pools eventually drain into either Coon Creek or another county ditch.

On June 30, 1978, a rainstorm began which continued until July 2, 1978. The total rainfall in the Wildlife Area for that period was 5.61 inches. On July 1 and 2, Walter Rohl, the manager of the Wildlife Area, manipulated the control structures at various times to prevent the water level of the pools from reaching danger points above which the water would wash out the dikes. As a result of the manipulations, water released from the pools was discharged into Coon Creek. The subsequent

flooding of appellants' lands precipitated this lawsuit.

1. Minnesota Statutes § 3.736, subd. 3(h) (1982) provides that the state and its employees are not liable for:

> Any loss arising from the construction, operation, or maintenance of the outdoor recreation system, as defined in section 86A.04, or from the clearing of land, removal of refuse, and creation of trails or paths without artificial surfaces, *except that the state is liable for conduct that would entitle a trespasser to damages against a private person.*

(Emphasis added.)

Green-Glo claims, first, that Minn. Stat. § 3.736, subd. 3(h) only grants the state immunity from suit by users of the recreational area. The language of the statute, however, preserves, in clear and unambiguous language, "any loss" *arising from* the construction, operation and maintenance of the outdoor recreation system. The term "arising from," considered in its tort law context, necessarily extends to all reasonably foreseeable consequences of the state's actions, whether those consequences occur on the state's land or outside it, and whether those consequences affect persons or property.

Certainly, the legislature could have circumscribed the state's immunity, as Green-Glo contends, but it did not. Since the language of the statute is unambiguous, it is not subject to construction. Minn.Stat. § 645.16 (1982). Furthermore, the legislature carved one exception from the otherwise broad immunity afforded by section 3.736, subd. 3(h)—it provided that the state would be liable for conduct that resulted in injuries for which a trespasser could recover damages from a private person—and, by specifying one exception, the legislature has excluded all other exceptions. Minn.Stat. § 645.19 (1982).

Therefore, the state is immune from liability unless subd. 3(h) of section 3.736 is unconstitutional. The test, under the equal-protection clause of U.S. Const. Amend. XIV, § 1, is whether or not a ra-

tional basis exists for the classification contained in the statute. *Minnesota v. Clover Leaf Creamery Co.,* 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981). We conclude that subd. 3(h) satisfies the rational-basis test.

Subdivision 3(h) immunizes the state from the liability for the acts of its agents in constructing, operating, and maintaining the outdoor recreation system. The state is liable, however, for "conduct that would entitle a trespasser to damages against a private person." Essentially, a trespasser is entitled to damages against a private possessor of land only if the trespasser has sustained bodily harm as a result of the possessor's failure to conform to the standard of conduct commensurate with the duty imposed under certain well-defined circumstances. Restatement (Second) Torts §§ 333–39. Moreover, since the statutory exception that permits the imposition of tort liability on the state rests not on the injured claimant's status but rather on the quality of the state's conduct, conduct related to the maintenance and operation of an outdoor recreation system may give rise to tort liability whether the claimant is within or outside of the recreational area when the conduct causes bodily harm.

Therefore, the limited immunity provided by Minn.Stat. § 3.736, subd. 3(h) may be summarized as follows: The state is liable for bodily injury caused to persons, whose presence within or outside of the recreational area is known or ought reasonably to be known, by the state's negligence in carrying out dangerous activities or in maintaining dangerous artificial conditions without adequate warnings, but the state is not liable for (a) bodily injury to persons whose presence is not readily foreseeable, (b) bodily injury caused by natural conditions, or (c) damage to property only.

It is not unreasonable for the state to limit its liability for bodily injury to injuries caused by conduct of the kind that would permit a trespasser to sue a private person. Natural conditions are to be expected in a recreational area, and the owner should not

be required to patrol the area or to make it safe for those who enter upon it. Indeed, a private possessor of land who permits its use for public recreational purposes is afforded analogous protection. Minn.Stat. §§ 87.0221, 87.023, 87.025 (1982).

■ The major constitutional issue is whether it is rational to relieve the state of potentially huge tort liability for damages to property caused by the operation of outdoor recreational areas. We hold that the shield afforded by section 3.736, subd. 3(h) is rationally related to the purpose of "the preservation of Minnesota's outdoor recreational resources" in light of "the growing demand for outdoor recreational facilities and the spread of development and urbanization in the state." Minn.Stat. § 86A.02, subd. 2 (1982). Tort immunity preserves the state's freedom to manage the areas in the best interests of the state and its citizenry.

Against the interests of the state in preserving the freedom to manage recreational areas, the legislature has balanced the need for compensation for tort victims, tempering the harshness of immunity, and the state's advantage over other landowners, by allowing actions against the state for bodily injury under certain circumstances. Furthermore, even landowners such as appellants here, who have suffered damage to their land, have some recourse, though they may have misconceived their remedy in this case. They may bring an action in inverse condemnation to require the state to condemn a flowage easement.

■ The legislature has attempted to equitably adjust the rights of the state regarding outdoor recreational areas and of those parties with claims against the state. The legislature's solution has a rational basis and should not be disturbed in the name of federal constitutional review. *See Minnesota v. Clover Leaf Creamery Co.*, 449 U.S. 456, 464, 101 S.Ct. 715, 724, 66 L.Ed.2d 659 (1981). We conclude that Minn.Stat. § 3.736, subd. 3(h) does not violate the guarantee of equal protection contained in U.S. Const.Amend. XIV, § 1 and that the trial court properly granted summary judgment for the state under that statute.

2. We address the final claim of appellant Green-Glo that it was error for the trial court to permit taxing by the clerk of $518.15 for three depositions taken by the state. The depositions were taken of two plaintiff parties and the plaintiffs' expert witness. Green-Glo contends that, because all of the parties were available for trial, the depositions were not "necessary" disbursements under Minn.Stat. § 549.04 (1982).

■ It is within a trial court's discretion to allow costs of depositions as disbursements. The availability of the witnesses for trial is not determinative. Ordinarily, however, cumulative, duplicative, or peripheral depositions would not be considered necessary. *Romain v. Pebble Creek Partners*, 310 N.W.2d 118, 124 (Minn.1981). We perceive no abuse of discretion in the allowance of the expense of the depositions in this case.

Affirmed.

SCOTT, Justice (dissenting).

I respectfully dissent. The majority misconstrues Minn.Stat. § 3.736, subd. 3(h), to shield the state from liability for losses occurring outside the outdoor recreation system. Assuming subdivision 3(h) does grant immunity to the state in this case, that grant amounts to a violation of equal protection under U.S. Const. amend. XIV, § 1, and Minn. Const. art. 1, § 2. It further violates Minn. Const. art. 1, § 8, which provides, "Every person is entitled to a certain remedy in the laws for all injuries or wrongs which he may receive to his person, property or character."

1. Stressing that subdivision 3(h) shields the state from "[a]ny loss arising from the construction, operation, or maintenance of the outdoor recreation system," the majority concludes that the statute unambiguously immunizes the state from injuries incurred by both users and non-users of the outdoor recreation system. That construction ignores the elementary canon

that statutes must be construed as a whole. *See Owens v. Federated Mutual Implement and Hardware Insurance Co.,* 328 N.W.2d 162, 164 (Minn.1983); *Underhill v. State,* 208 Minn. 498, 500, 294 N.W. 643, 644 (1940). Read as a whole, subdivision 3(h) is certainly ambiguous, and I submit that the only sensible construction would limit its application to those using the outdoor recreation system.

Despite the broad "any loss arising from" language, the legislature carved an exception whereby the state would be liable "for conduct that would entitle a trespasser to damages against a private person." Application of the standard of care owed a trespasser necessarily implies that the injury must occur in the recreational area. A trespasser, by definition, is one who enters land of another without consent. To apply that standard of care to injuries occurring outside the recreational area, as the majority has done, is illogical. By creating the exception cited above, the legislature logically intended that the subdivision would apply only to losses incurred by those using the recreational area. Accordingly, I would conclude that the state was not immune from suit under subdivision 3(h) in the circumstances presented.

2. Assuming the majority correctly construed subdivision 3(h) to apply here, that grant of immunity would be unconstitutional. This court has long been troubled by the unjustified disparate treatment of victims injured by government tortfeasors. *See Nieting v. Blondell,* 306 Minn. 122, 235 N.W.2d 597 (1975); *Spanel v. Mounds View School District No. 621,* 264 Minn. 279, 118 N.W.2d 795 (1962). In response to *Spanel* and *Nieting,* the legislature enacted the Municipal Tort Liability Act (Minn. Stat. § 466) in 1963, and then the Minnesota Tort Claims Act (Minn.Stat. § 3.736) in 1976. Those acts codified the abolition of sovereign immunity, asserting a right "where the state, if a private person, would be liable to the claimant," with certain enumerated exceptions.

Recently, this court addressed the question of whether preferential treatment accorded government tortfeasors by those acts violates the equal protection clause in U.S. Const. amend. XIV, § 1. The equal protection clause "requires that a legislative classification apply uniformly to all those similarly situated; that the distinctions separating those who are included within the classification from those who are excluded are not arbitrary or capricious, but instead are real and substantial; and that the classification is consonant with a lawful purpose." *Kossak v. Stalling,* 277 N.W.2d 30, 34 (Minn.1979). In *Kossak,* we struck down the one-year statute of limitations provided for in the Municipal Tort Liability Act, Minn.Stat. § 466.05, subd. 3 (1971), for denying equal protection of the laws. We held that there existed no rational basis for a one-year limit where notice also had to be given, and thus the claimants were entitled to the six-year limitations period enjoyed by victims of private tortfeasors. 277 N.W.2d at 35.

In the instant case, when applied to a loss occurring outside the outdoor recreation system, subdivision 3(h) draws a distinction between governmental and private tortfeasors and consequently distinguishes between victims of governmental and non-governmental wrongdoers.[1] In upholding subdivision 3(h) against appellants' equal protection challenge, the majority opinion suggests two ways in which the shield afforded by that statute rationally furthers the purposes underlying the outdoor recreation act. While the majority applies the appropriate standard of review, neither of the suggested justifications is tenable.

First, the majority opinion claims that "[t]ort immunity preserves the state's freedom to manage the areas in the best interests of the state and its citizenry." The express language of subdivision 3(h) undercuts any reliance upon that justification.

---

**1.** In contrast, if private landowners permit their land to be used, without charge, by the public for beneficial recreational purposes, they are afforded essentially the same protection as the state with respect to users of their land. *See* Minn.Stat. §§ 87.0221, 87.023, 87.025 (1982).

While management of the area would be protected under the discretionary immunity exception to liability provided by subdivision 3(b), subdivision 3(h) does not shield the state from losses arising from management decisions. Rather, by its terms, it shields the state from losses "arising from the *construction, operation,* or *maintenance* of the outdoor recreation system." (Emphasis added.) As such, although the majority's reasoning may rationally support application of the discretionary immunity exception to liability, it bears no rational relationship to the immunity afforded by subdivision 3(h) and, therefore, fails to provide an adequate justification under the equal protection clause.[2]

Second, the majority contends, "It is not unreasonable for the state to limit its liability for bodily injury to injuries caused by conduct of the kind that would permit a trespasser to sue a private person," because "[n]atural conditions are to be expected in a recreational area, and the owner should not be required to patrol the area or to make it safe for those who enter upon it." There may be a rational basis for shielding the state from liability to those using the recreation system, due to the dangers inherent in a system open for public hunting, fishing, trapping, and other recreational activities. That justification, however, has no application where, as here, the loss occurred outside the recreational system. Therefore, while that justification may provide a basis for immunizing the state from loss incurred by a user, it does not afford a proper justification for immunizing the state from the harm inflicted on non-users.

The reasons proffered by the majority fail to justify immunizing the state from liability to non-users. The only possible reason for immunizing the state from liability to non-users would be to lessen the impact of tort liability upon the public coffers. Such reasoning resurrects the disavowed sovereign immunity doctrine. Significantly, in abolishing state tort immunity, this court denounced the sovereign immunity doctrine as being an unjustifiable "exception to the fundamental concept of tort law that liability follows tortious conduct." *Nieting,* 306 Minn. at 128, 235 N.W.2d at 601. Indeed, in *Kossak,* we expressed doubt whether there could ever exist a proper basis for distinguishing between victims injured by a private tortfeasor and those injured by a government tortfeasor. 277 N.W.2d at 34–35 n. 6. In the instant case, I would conclude that there exists no rational basis for the classification created by applying subdivision 3(h) to the circumstances presented here.

In conclusion, if appellants are able to prove that the state was negligent in constructing, operating, or maintaining the holding ponds located within the outdoor recreation system, the state should be held liable for its negligent acts. Accordingly, I cannot join the majority's decision which unjustifiably denies appellants a remedy for their injuries as mandated by the Minnesota Constitution.

AMDAHL, Chief Justice.

I join in the dissent of Justice Scott.

TODD, Justice.

I join in the dissent of Justice Scott.

YETKA, Justice.

I join in the dissent of Justice Scott.

**2.** It could be argued that the word "operation" includes management. However, recent decisions undercut such an argument. In construing the discretionary immunity exception to tort liability, we settled on the planning-operational distinction as a guide to determine whether discretionary immunity applies. See *Cairl v. State,* 323 N.W.2d 20, 23 n. 2 (Minn.1982); *Larson v. Independent School District No. 314,* 289 N.W.2d 112, 120 (Minn.1980). That definitional dichotomy precludes the word "operation" from being construed as synonymous with management. Management implies planning what to construct, how to operate or when to maintain, but does not include the implementation of those activities. Finally, the allegedly tortious conduct at issue here was operational and, therefore, the state would not be immune from suit under the discretionary immunity exception for the allegedly negligent acts committed at the operational level.