Steve Louis **LARSON**, Respondent,

v.

**HILL'S HEATING AND REFRIGERATION OF BEMIDJI, INC., Appellant.**

No. CO–86–1176.

Court of Appeals of Minnesota.

Feb. 17, 1987.

Review Denied April 17, 1987.

Mary Kay Klein, Smith, Carpenter, Benshoof & Klein, P.A., Bemidji, for respondent.

Thomas L. D'Albani, Cann, Schmidt, Haskell & D'Albani, P.A., Bemidji, for appellant.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and HUSPENI, JJ.

## OPINION

SEDGWICK, Judge.

In this breach of contract action, appellant contends the trial court committed various reversible errors of law. We affirm.

## FACTS

On February 6, 1984, appellant Hill's Heating and Refrigeration of Bemidji, Inc. (Hill's Heating) and respondent Steven Larson signed a sales and purchase agreement, under which Hill's Heating agreed to purchase Larson Refrigeration for $20,000. Hill's Heating paid $3000 at the closing and signed a promissory note for the balance, which called for 36 equal monthly payments and 12% annual interest, beginning April 1, 1984.

At the same time, the parties entered into a written employment contract, under which Larson agreed to work for Hill's Heating for two years, beginning April 2, 1984. The employment contract provided that any changes had to be in writing.

Steven Hill, president and part-owner of Hill's Heating, testified at trial that the employment contract was crucial to the deal. Without it, he testified, he would not have bought Larson's business, because Larson had a good reputation with his customers and Hill needed Larson to retain those customers and acquire new ones. Hill's Heating had not previously been involved in the refrigeration business. Larson agreed at trial that he was one of the best refrigeration servicers in Bemidji. Larson was to receive over $30,000 plus profits under the employment contract; Hill testified that no other employee was making more than approximately $18,000.

After the agreements were signed, Larson learned of an attractive opportunity for temporary employment in Alaska which would require a postponement of his April 2 starting date with Hill. Hill agreed to let Larson begin working on May 7. Larson agreed to reimburse Hill for certain extra expenses resulting from his delay in returning. This agreement to modify the employment contract was never put in writing.

In late March or early April 1984, Larson called Hill and told him he wanted to stay in Alaska. The parties gave differing accounts of the phone conversation.

Hill testified that Larson told him he was going to stay in Alaska because the job was such a good deal.

Larson testified that when he called Hill, he had not yet decided to stay in Alaska, but that he wanted to stay and was calling to see if he could be released from the employment contract.

During a later phone conversation, Larson testified, Hill told him that he did not have to return to Minnesota to work for him, and that Hill's Heating would not have trouble finding replacement workers. Larson testified he offered to return to work under the contract, but Hill turned down his offers. Hill testified Larson offered to come back for a couple of weeks to train a replacement worker, but that he rejected the offer.

Larson sent Hill a letter of resignation, postmarked April 23, 1984. Hill never notified Larson in writing that he was in default of the employment contract.

In June 1984, Larson returned to Bemidji and asked for the payments due under the promissory note. Hill said Larson owed him money. Larson testified that at this time he again offered to honor the employment contract, but Hill said it was too late. He then offered to buy his business back, but Hill declined.

Larson then brought this action against Hill under the purchase and sale agreement and promissory note. Hill has not paid any of the installments due under the promissory note. In his complaint, Larson sought either (1) claim and delivery of the property transferred to Hill under the agreement and a deficiency judgment for the amount left unsatisfied after sale of the property, or (2) a money judgment if the property could not be recovered. Hill counterclaimed for breach of the employment contract. At trial, Larson dropped his request for claim and delivery and sought only the money due under the promissory note.

The trial lasted two days. After the close of evidence, the court stated:

I do find that the employment agreement was breached and so we're pretty well down to a question of damages and * * * I will flesh that out.

* * * You have a right to brief anything else you want to, but I'm quite satisfied. I did go over the exhibits this morning and I have heard all of the testimony and it is fresh in my mind. So I'm not having any real problems with the facts as I found them to be, and they will be in more detail and the memorandum will give the reasons for it.

\*      \*      \*      \*      \*      \*

As I say, I will flesh out those findings. But I thought I would give you that insight because by and large my judgment on facts doesn't get significantly better by putting off the decision. So those are the factual decisions.

* * * I am stating this for guidelines. I have certainly been known to change my mind, and if you want to brief and argue the facts relative to those issues that I have enunciated, please feel free to do that. It's conceivable. I think it is only fair to tell you what I am thinking right now.

When the court finally issued its written findings of fact, conclusions of law, and order for judgment on February 26, 1986, it had changed its mind. It held there was no breach of the employment contract because it found that Hill had agreed to its cancellation. Larson was granted judgment on the promissory note, and ordered to convey clear title to the property to Hill's Heating upon receipt of the remaining payments due under the note. Larson was also awarded costs and disbursements.

The trial court denied Hill's Heating's motion for amended findings or a new trial. Hill's Heating appeals from the order denying post-trial relief.

### ISSUES

1. Did the trial court err in holding that the employment contract had been terminated?

2. Is appellant entitled to a new trial as result of the trial court's eight-month delay in issuing a written decision, which was contrary to its preliminary oral decision?

3. Did the trial court err in excluding evidence of projected lost profits?

4. Did the trial court err in refusing to accept appellant's amortization schedule for computing the amount due respondent under the the the promissory note?

5. Did the trial court err in not holding respondent liable for bond costs incurred by appellant as a result of respondent's request for claim and delivery?

6. Did the trial court err in awarding respondent costs for deposing appellant?

### ANALYSIS

Hill's Heating's appeal from the judgment was brought more than 90 days after entry of the judgment and is therefore untimely. *See* Minn.R.Civ.App.P. 104.01. Accordingly, this appeal is only from the post-trial order.

1. *Termination of employment contract.*

▬ (a). Hill's Heating argues the trial court's finding that the parties agreed to cancel the employment contract is not supported by the evidence.

Minn.R.Civ.P. 52.01 states, "Findings of fact shall not be set aside unless clearly erroneous, and due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses." A trial court's findings of fact will not be set aside under the clearly erroneous standard if "they are reasonably supported by evidence in the record considered as a whole." *Hubbard v. United Press International*, 330 N.W.2d 428, 441 (Minn.1983). Where, as here, the evidence supporting the finding consists entirely of oral testimony, it will be reversed only in the most unusual circumstances. *Gretsfeld v. Commissioner of Public Safety*, 359 N.W.2d 744, 746 (Minn.Ct.App.1985).

Larson testified that in their last phone conversation before he returned from Alaska, Hill released him from the employment

contract, telling Larson that it wouldn't be necessary for him to come to work for Hill's Heating. Hill's Heating counters that it would be illogical for Hill to release Larson without consideration because of his importance to the business.

Larson's version is corroborated somewhat by other witnesses' testimony. Don Pearson, a former employee of both Hill and Larson, testified that when he asked Hill about Larson's offer to come back and help out with the business, Hill disparaged the offer, calling it "charity work." Pearson added that Hill told him he could hire two men for the same amount that Larson would cost. Pearson also testified about Hill's reputation for truthfulness in the community: "[S]ometimes I think it's not too good."

Sandra Larson testified that in March 1984 she asked Hill,

"Now with Steve being up there and not coming back, is that going to hurt you in any way?" And he said no and I said, "Well, I don't want to move to Alaska. Call him and tell him he has to come back." And he said, "No, I don't need him."

In its memorandum decision, the trial court explained that it found the testimony "relative to a mutual agreement not to enforce the contract to be most persuasive" after "considering the credibility of the witnesses and all of the facts presented."

The assessment of the credibility of witnesses and the weight to be given their testimony are for the trial court. *See, e.g., Fontaine v. Hoffman,* 359 N.W.2d 692, 694 (Minn.Ct.App.1984). The trial court's determination that Hill orally released Larson from the employment contract is supported by the evidence.

(b). Hill's Heating argues that even if Hill orally agreed to terminate the employment contract, such termination would be ineffective since the contract provided that it

will not be changed orally, but only by agreement in writing signed by the party against whom enforcement of any waiv-

er, change, modification or discharge is sought.

■■■ The general common law rule is that a written contract can be varied or rescinded by oral agreement of the parties, even if the contract provides that it shall not be orally varied or rescinded. 6 *Corbin on Contracts* § 1295, at 206 (1962). In *Lamberton v. Connecticut Fire Insurance Co.,* 39 Minn. 129, 39 N.W. 76 (1888), the supreme court held that an insurance company had waived a contract's requirement of written notice of abandonment by orally assuring plaintiff that its property was insured, even though the contract had a provision against oral waivers. More recently, in *Goshey v. ITT Life Insurance Corporation,* 590 F.2d 737, 740 (8th Cir.1979), the court, applying Minnesota law, stated,

Ordinarily, under contract law, a provision purporting to prohibit modification of a contract except by a specified method does not prevent the parties to a contract from modifying it by some other methods.

In light of this authority, we believe that Hill's oral agreement to cancel the employment contract was effective despite the contract's provision against oral modification.

(c). Hill's Heating argues that the oral cancellation violates the statute of frauds. However, they did not raise this argument below, and we will not consider it for the first time on appeal. *See, e.g., Morton v. Board of Commissioners,* 301 Minn. 415, 427, 223 N.W.2d 764, 771 (1974).

2. *Delay in issuing written decision.*

■■■ Hill's Heating contends that the court's delay in issuing a written decision, combined with the court's changing its mind, shows that the "decision making process went sour" and that a new trial is required under Minn.R.Civ.P. 59.01(1) (new trial may be granted for irregularity in the proceedings of the court which deprive moving party of fair trial). It relies on Minn.Stat. § 546.27 (1984), which states:

All questions of fact and law * * * shall be disposed of and the decision filed with

the clerk 90 days after such submission, unless sickness or casualty shall prevent, or time be extended by written consent of the parties.

Whether to grant a new trial rests solely in the discretion of the trial court, and its decision will be reversed only for clear abuse of that discretion. *Benson v. Rostad,* 384 N.W.2d 190, 194 (Minn.Ct.App. 1986).

In denying Hill's Heating's motion for post-trial relief, the trial court stated:

> The court does recognize that its initial impressions as stated on the record were different than the conclusions the court reached after an unhurried review [of] the evidence. That difference turned exclusively upon the fact that there was no writing to support the mutual agreement of the parties to cancel the contract.
>
> In its later official decision in this case, the court determined that the prior conduct of the parties by clear and convincing evidence established a course of conduct of modifying the contract without regard to [the] contract provision that modification had to be in writing, they having previously admittedly agreed to changes orally.
>
> ·Again, by clear and convincing evidence this court was convinced in a calm perusal of the facts that the parties had agreed to a termination of the contract.
>
> That part of the decision was based to a large extent on the credibility of witnesses, the court having found that the testimony of Larson's witnesses was substantially more credible than that of Hill's.

In *Garvey v. Garvey,* 390 N.W.2d 33, 35 (Minn.Ct.App.1986), this court held that a trial court's two-year delay in rendering a decision was, by itself, an insufficient basis for a new trial. Similarly, in *Haasken v. Haasken,* 396 N.W.2d 253 (Minn.Ct.App. 1986), we held that a ten-month delay in deciding a case did not require a new trial absent a showing of prejudice. Since Hill's Heating cites no unfair prejudice it suffered because of the delay, it is not a basis for a new trial.

Hill's Heating also argues that the trial court's oral findings were the only legal findings and that its written findings had no legal effect, because under Minn.R. Civ.P. 52.02 a court may only amend its findings upon motion of a party, and no such motion was made prior to the written decision. We disagree. The trial court's oral findings were merely preliminary, nonbinding observations.

## 3. *Exclusion of evidence of projected lost profits.*

Hill's Heating argues that the trial court erred in excluding evidence of its projected 1985 profits, which were offered to show its projected lost profits as a result of Larson's alleged breach of the employment contract. Since the trial court properly found that there was no breach, the proffered evidence was irrelevant even if it were otherwise admissible. Additionally, Hill's Heating did not raise this issue in its motion for post-trial relief, and therefore it cannot do so now.

## 4. *Amount due under promissory note.*

Hill's Heating argues that the trial court erred in computing the amount past due under the promissory note, because it did not follow an amortization schedule provided by Hill. However, the court was correct in not following Hill's original amortization schedule, because the monthly payments were not made as the schedule assumed, and the schedule's computation of principal and interest due is therefore incorrect.

## 5. *Reimbursement for bond costs.*

Since Larson's complaint sought (in the alternative) claim and delivery, Hill's Heating was required to post bond to retain possession of the property under Minn. Stat. § 565.25, subd. 2 (Supp.1985). At trial, Larson dropped his request for claim and delivery. The court found that, because of commingling and use of the property, it was impossible to order its return

and therefore entered a money judgment for Larson instead. Hill's Heating argues that since it ultimately got to keep the property, its bond costs should be deducted from the judgment awarded Larson.

Hill's Heating cites no authority for this novel argument. Since Larson was successful on his claim, there is no reason to require him to pay Hill's Heating's bond costs.

## 6. *Costs and disbursements.*

 The trial court awarded Larson costs and disbursements, including $276.75 in costs related to the deposition of Hill. Hill's Heating argues that it was error to award those costs because Hill's deposition was not used at trial.

Minn.Stat. § 549.04 (1984) provides that the prevailing party in an action in district court "shall be allowed reasonable disbursements paid or incurred." The awarding of deposition costs is discretionary with the trial court. *Green-Glo Turf Farms v. State,* 347 N.W.2d 491, 495 (Minn.1984).

Hill's Heating relies on the following language from *Romain v. Pebble Creek Partners,* 310 N.W.2d 118, 124 (Minn.1981):

> The burden is on the prevailing party to show both that the depositions and copies were necessary to the conduct of the litigation and that they were effectively and pertinently used by the prevailing party.

However, that case was decided before the statute was amended in 1983. The old statute provided for the awarding of necessary, as opposed to reasonable, disbursements. Minn.Stat. § 549.04 (1982). Even under the old statute, moreover, the "availability of the witnesses for trial [was] not determinative." *Green-Glo Turf Farms,* 347 N.W.2d at 495. The trial court did not abuse its discretion in awarding costs for the deposition of the opposing party.

We have considered appellant's other contentions and find them to be without merit.

## DECISION

Affirmed.