**FIRST NATIONAL BANK OF the NORTH, et al., Appellants,**

**v.**

**MILLER SCHROEDER FINANCIAL, INC., et al., Defendants,**

**State of Minnesota, Respondent.**

**No. A05–705.**

Court of Appeals of Minnesota.

Jan. 31, 2006.

---

Vernon J. Vander Weide, Thomas V. Seifert, Head, Seifert & Vander Weide, Minneapolis, MN; and John A. Cochrane, Cochrane & Bresnahan, P.A., St. Paul, MN, for appellants.

Mike Hatch, Attorney General, Gary R. Cunningham, Assistant Attorney General, St. Paul, MN, for respondent.

Considered and decided by HALBROOKS, Presiding Judge; KLAPHAKE, Judge; and WRIGHT, Judge.

## OPINION

WRIGHT, Judge.

Appellants sued the State of Minnesota for damages based on tort liability and the Minnesota Consumer Fraud Act, alleging that the state improperly registered certain debt securities. The district court dismissed appellants' suit for failure to state a claim on which relief can be granted. We affirm.

## FACTS

On November 14, 1997, the Minnesota Department of Commerce (the department) issued a notice of registration by coordination for debentures offered by United Homes, Inc. (UHI). *See* Minn. Stat. § 80A.10 (2002) (allowing registration of securities in coordination with federal registration). This registration authorized UHI to sell its debentures in Minnesota. Appellants First National Bank, Prairie National Bank, Centennial National Bank, Alan Stearns, and Clare Gallagher acquired UHI debentures. UHI filed for bankruptcy in March 2000 and currently has insufficient assets to pay a return on the debentures sold to appellants.

The department is charged with regulating securities sold in Minnesota. As part of the process of registering debt securities, such as UHI's debentures, the department reviews the proposed offering for compliance with several statutory and regulatory criteria. When it reviewed UHI's request for coordinate registration, the department did not strictly comply with some of its regulatory requirements for registration of securities. In their complaint, appellants claim that this noncompliance gave rise to several tort and statutory causes of action against the State of Minnesota, including negligence, negligent misrepresentation, fraud, aiding and abetting, and violation of the Minnesota Consumer Fraud Act.

The state moved to dismiss for failure to state a claim on which relief can be granted. In doing so, the state asserted statutory immunity from liability for appellant's tort claims under Minn.Stat. § 3.736 (2002). The state also argued that appellants failed to state a claim under the Minnesota Consumer Fraud Act because the department had not made any false representations regarding the registration of the debentures. The district court dismissed appellants' claims under Minn. R. Civ. P. 12.02(e). This appeal followed.

## ISSUES

I. Does statutory immunity bar appellants' tort claims based on the registration of UHI's debentures?

II. Does the Minnesota Consumer Fraud Act authorize suits against the state as an entity?

## ANALYSIS

[1] We review de novo a dismissal for failure to state a claim on which relief can be granted to determine whether the complaint sets forth a legally sufficient claim for relief. *Barton v. Moore,* 558 N.W.2d 746, 749 (Minn.1997). We accept the facts alleged in the complaint as true and construe all reasonable inferences in favor of the nonmoving party. *Marquette Nat'l Bank v. Norris,* 270 N.W.2d 290, 292 (Minn.1978).

## I.

[2] Appellants argue that the state is liable in tort because the department failed to follow its own regulations when it registered UHI debentures for sale in Minnesota. Specifically, appellants allege that the UHI registration was approved despite the department's knowledge that the UHI offering would not meet the registration requirements without including cash flow from borrowing, which is prohibited by Minn. R. 2875.3500, subp. 2A (1997).

Generally, under the Minnesota Tort Claims Act, the state will pay damages for torts caused by state employees acting within the scope of their employment "where the state, if a private person, would be liable to the claimant." Minn.Stat. § 3.736, subd. 1 (2002). But the Minnesota Tort Claims Act includes several exclusions under which the state is immune from tort liability. Under subdivision 3(k), for example, the state is not liable for "a loss based on the failure of a person to meet the standards needed for a license, permit, or other authorization issued by the state or its agents." *Id.*, subd. 3(k) (2002). In considering whether this exclusion applies to the state in this case, our analysis focuses on whether registration of UHI debentures is "a license, permit, or other authorization issued by the state." Thus, we are presented with an issue of statutory interpretation, which we review de novo.

The object of statutory interpretation is to give effect to the intention of the legislature. *Educ. Minn.-Chisholm v. Indep. Sch. Dist. No. 695,* 662 N.W.2d 139, 143 (Minn.2003). If the meaning of a statute is clear, then it shall be given effect according to the plain meaning of the words used. *Molloy v. Meier,* 679 N.W.2d 711, 723 (Minn.2004); *see also* Minn.Stat. § 645.08(1) (2004) (stating canons of statutory construction).

A "license" is defined as an "official or legal permission" to perform a specified act. *American Heritage Dictionary* 1038 (3d ed.1985). "Authorization" is synonymous with "permission." *Id.* at 124. The state does not permit the sale of securities to the public unless the securities have been registered by the department. Minn. Stat. § 80A.08 (2002). As such, the department's registration of securities is an act of "license, permit, or other authorization" governed by Minn.Stat. § 3.736, subd. 3(k). Appellants' tort claims derive from the fact that, although the UHI debentures failed to meet the requisite standard to authorize their sale in Minnesota, the state registered them for sale. This type of failure is precisely what the legislature excluded under Minn.Stat. § 3.736, subd. 3(k).

Citing *Gertken v. State,* 493 N.W.2d 290 (Minn.App.1992), *review denied* (Minn. Feb. 9, 1993), appellants argue that the state is not immune from liability under the licensing exclusion in this case. Appellants' reliance on *Gertken* is misplaced. In *Gertken,* we held that the state was immune from liability for the deaths of two individuals from carbon-monoxide poisoning after a homeowner asked an inspector during a daycare-licensing inspection about fireplace cleaning. *Id.* at 291–93. The homeowner alleged that the inspector

failed to notice dangerous conditions that violated the licensing standards and that the homeowner had detrimentally relied on the inspector's advice about whether fireplace cleaning was needed, which led to the deaths of her husband and daughter. *Id.* at 291. Our analysis in *Gertken* turned on whether the inspector's representations were directly related to the scope of the subject matter considered in licensing. *Id.* at 292. We determined that, because the inspector's representations to the homeowner about fireplace cleaning were related to the subject matter involved in the licensing decision, the state was immune from suit. *Id.* at 292–93.

Appellants' allegations here are analogous to those in *Gertken.* Appellants allege that the department erroneously concluded, in violation of its own regulations, that UHI would be able to fund its debentures. While the department's conclusion may have been erroneous, as was the conclusion of the inspector in *Gertken,* any representation made by the department as a result of the registration certainly was directly related to the subject matter considered in registering the securities.

Appellants argue that *Gertken* contains an "express representation" exception to the licensing exclusion that applies in this case. Indeed, in *Gertken* we noted that the holding was "confined to the facts" and did not "address the issue of an express representation which differs from the representations implied by licensing." *Id.* at 292 n. 3. But here, the department made no express representation to appellants apart from the issuance of the registration itself. That representation comprised only the fact that the UHI debentures had been registered for sale in Minnesota.[1] Any representation implied by registration of a security is outside the scope of the *Gertken* exception. Thus, under Minn.Stat. § 3.736, subd. 3(k), the state is immune from tort liability premised on its registration of the UHI securities.

■ Appellants maintain for the first time on appeal that interpreting the Minnesota Tort Claims Act so as to bar their tort claims against the state would render the Act unconstitutional. Citing Minn. Const. art. 1, § 8, appellants assert that applying statutory immunity to bar their claims unconstitutionally abrogates a common-law remedy for willful wrongs committed by government officials. Because this issue was neither considered nor decided by the district court, we decline to rule on that issue here. *See Thiele v. Stich,* 425 N.W.2d 580, 582 (Minn.1988) (holding that appellate court generally will not consider matters not decided by district court). Moreover, appellants' constitutional claim is without merit. First, there has never been a common-law remedy for an injury arising from a violation of Minnesota's securities regulations, which were not enacted until 1973. Second, enactment of the Minnesota Tort Claims Act was an exercise of the state's sovereign-immunity authority. When the Minnesota Supreme Court abolished the judicial regime of sovereign immunity, it specifically left room for the legislature to adopt an immunity statute. *See Nieting v. Blondell,* 306 Minn. 122, 132, 235 N.W.2d 597, 603 (1975) (abolishing sovereign immunity prospectively to allow legislature to act before elimination of defense). Far from declaring that it is unconstitutional for the state to limit its own liability, the Minnesota Supreme Court expressly recognized the state's power to do so. *Id.*

1. The securities regulations specifically indicate that "the fact that a security is effectively registered ... [does not constitute] a finding by the commissioner that any document filed under this chapter is true, complete and not misleading." Minn.Stat. 80A.18.

II.

Appellants also argue that, when the department registered the UHI debentures, it violated the Minnesota Consumer Fraud Act. The Minnesota Consumer Fraud Act prohibits the "act, use, or employment by any person of any fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise." Minn.Stat. § 325F.69, subd. 1 (2002).

Our analysis of the plain language of the statute establishes that the Minnesota Consumer Fraud Act does not apply to the state as an entity. Although neither party raised this argument on appeal, we may properly decide a case based on arguments not raised by the parties when our reasoning is neither novel nor questionable. *State v. Hannuksela,* 452 N.W.2d 668, 673–74 n. 7 (Minn.1990).

The Minnesota Consumer Fraud Act prohibits "any person" from engaging in fraudulent conduct. Minn.Stat. § 325F.69, subd. 1. The term "person" is defined as "any natural person or a legal representative, partnership, corporation (domestic and foreign), company, trust, business entity, or association, and any agent, employee, salesperson, partner, officer, director, member, stockholder, associate, trustee, or cestui que trust thereof." Minn.Stat. § 325F.68, subd. 3 (2002). This definition does not encompass the state as an entity. Moreover, interpreting the Minnesota Consumer Fraud Act to authorize a suit against the state for registering the UHI debentures is contrary to the Act's purpose, which is to "address the unequal bargaining power often present in consumer transactions." *Ly v. Nystrom,* 615 N.W.2d 302, 308 (Minn.2000). Appellants do not allege that the state is a party to any sale of merchandise in this case; nor are there allegations to support a claim that the state wielded unequal bargaining power over appellants who purchased UHI's debentures. Moreover, as discussed above, the department made no express representation to appellants apart from the issuance of the registration itself. Finally, our extensive research has not disclosed any other instance in which the state has been sued for a violation of the Minnesota Consumer Fraud Act.

Because the Minnesota Consumer Fraud Act does not authorize suits against the state, appellants failed to state a claim on which relief can be granted.

## DECISION

Because the state's action in registering securities for sale in Minnesota is an act of licensing "or other authorization" to which statutory immunity under Minn.Stat. § 3.736, subd. 3(k) (2002), applies, and because the state is not subject to suit under the Minnesota Consumer Fraud Act, the district court properly dismissed appellants' claims.

**Affirmed.**