Michael ALEXANDER, Appellant,

v.

Terry EILERS, Sheriff of Douglas County, County of Douglas, Respondents,

State of Minnesota, et al., Defendants.

No. C5-87-2396.

Court of Appeals of Minnesota.

April 26, 1988.

Bradley C. Warner, James H. Kaster, Nichols, Kaster & Anderson, Minneapolis, for Michael Alexander.

Robert G. Haugen, Johnson & Lindberg, Minneapolis, for Terry Eilers, Sheriff of Douglas County.

Steven R. Schwegman, Michael T. Milligan, Quinlivan, Sherwood, Spellacy & Tarvestad, St. Cloud, for Douglas County.

Considered and decided by NIERENGARTEN, P.J., and LANSING and SCHUMACHER, JJ., without oral argument.

## OPINION

SCHUMACHER, Judge.

Appellant was discharged from his employment after it was determined that he had "failed" a polygraph examination. He argued his employer was subject to civil and/or criminal penalties for violating Minn.Stat. §§ 181.75 and 181.76 which prohibit such examinations conducted for the purpose of ascertaining the honesty of an employee. The trial court granted summary judgment to respondents, dismissing the portions of appellant's complaint pertaining to the statute. From that dismissal, Michael Alexander now appeals. We reverse and remand.

### FACTS

Michael Alexander was employed as a jailer/dispatcher in the Douglas County Sheriff's Office. He and a handful of other employees were subjected to "interviews" and polygraph examinations after Alexander discovered that $40.00 was missing from an envelope containing a prisoner's personal effects.

Jerry Werner, Chief Investigator for the Douglas County Sheriff's Office, had instructed all officers to begin all criminal investigation interviews with a Miranda warning and by obtaining a signed statement from the suspect indicating that the warning had in fact been given. Werner himself conducted Alexander's interview, but did not give him a Miranda warning or obtain the signed statement. Midway through the interview, Werner read Alexander his rights. At the conclusion of questioning, Werner asked Alexander if he would be willing to submit to a polygraph exam. Alexander agreed to do so. Werner interviewed Alexander a second time a few days later, beginning the second session with a Miranda warning.

At the polygraph exam, Alexander was again apprised of his rights. Prior to this time, he had believed the questioning was merely an internal investigation, not a criminal one. Concerned by the warning, he asked Sheriff Terry Eilers whether the exam was mandatory and whether charges would be filed. Eilers told him he had to submit to the exam, but that charges would not be filed, further corroborating Alexander's belief that the investigation was not criminal. As an officer, he knew that a criminal suspect could not be compelled to submit to such an exam.

Alexander then took and failed the exam. He steadfastly maintained his innocence despite pressure to confess from the polygraph operator. Later that night, he was suspended without pay.

Alexander filed a complaint with the Minnesota Department of Labor. Within two hours of learning of the complaint, Sheriff Eilers fired Alexander. His failure to pass the polygraph was mentioned in his letter of termination which was subsequently published on the front page of the local newspaper.

Alexander challenged his termination through the grievance and arbitration proceedings established by his union contract, and he won reinstatement with full back pay.

However, working conditions became unbearable for him after his reinstatement. The record is incomplete, but it appears Alexander was shunned by his fellow officers, excluded from departmental social functions and denied the opportunity to participate in professional training schools. He resigned from his job nine months after his reinstatement and is currently employed as deputy sheriff in another county.

Alexander then filed this lawsuit alleging libel, slander, defamation, retaliatory and constructive discharge, interference with contract, negligence and violations of Minn. Stat. §§ 181.75 and 181.76. The trial court granted respondents' motion for summary judgment on those counts in the complaint based solely upon the statutory violations.

## ISSUE

1. Whether the trial court erred in ruling that the polygraph examination administered to appellant was made in the course of a criminal investigation as a matter of law?

## ANALYSIS

Appellant brings his complaint under Minn.Stat. § 181.75 which provides:

No employer or agent thereof shall directly or indirectly solicit or require a polygraph, voice stress analysis, or any test purporting to test the honesty of any employee or prospective employee. No person shall sell to or interpret for an employer or the employer's agent a test that the person knows has been solicited or required by an employer or agent to test the honesty of an employee or prospective employee. An employer or agent or any person knowingly selling, administering, or interpreting tests in violation of this section is guilty of a misdemeanor. If an employee requests a polygraph test any employer or agent administering the test shall inform the employee that taking the test is voluntary.

Minn.Stat. § 181.75, subd. 1 (1986).

The statute further provides for investigation of suspected violations by the Department of Labor and Industry with appropriate civil, criminal and injunctive relief. Minn.Stat. § 181.76 entitles a plaintiff to additional relief if submission to an examination or the results thereof are subsequently disclosed to a third party.

The trial court found, as a matter of law, that a polygraph test may be administered to a police officer in the course of an internal criminal investigation. The Minnesota Supreme Court has acknowledged the importance of the polygraph as an investigatory tool:

[Use of the polygraph] may frequently lead to confessions or the discovery of facts which may ultimately lead to the solution of many crimes * * *."

*State v. Kolander,* 236 Minn. 209, 221, 52 N.W.2d 458, 465 (1952); *see also State v. Erickson,* 403 N.W.2d 281 (Minn.Ct.App. 1987). That the legislature supports the use of polygraphs in criminal investigations is evident from the legislative history surrounding the repeal of Minn.Stat. § 181.77. That statute had specifically authorized the use of polygraphs for investigatory purposes within a police department even in the absence of a criminal investigation. When asked whether the police could continue to use polygraphs in their criminal investigations, Senator Doty, author of the repeal legislation, responded:

Correct. And they can even use a polygraph on their own people if it is for criminal prosecution. * * * This [bill] in no way interferes with criminal investigations.

Clearly, the legislature did not intend to provide blanket protection for law enforcement officials while permitting such testing of the general population. The pivotal question, then, is whether the polygraph is requested or required for a criminal investigation, or for the internal use of a business or department. If this investigation was criminal, requiring Alexander to submit to the exam against his will may have been a violation of other protected rights, but appellant will have no basis for a claim under this statute. The trial court found, as a matter of law, that this investigation was criminal in nature. That decision will be upheld on appeal if there is no genuine

factual issue on that question. Minn.R. Civ.P. 56.03.

Appellant argues the police department's failure to follow standard investigatory procedure led him to believe the investigation merely internal. No *Miranda* warning was given and no *Miranda* form was signed prior to the initial interview, despite the departmental policy which required such warnings for any criminal investigation. When asked, Alexander was told the polygraph was mandatory. Alexander knew criminal suspects could not be compelled to submit to such an exam. Moreover, Sheriff Eilers assured Alexander that no charges would be pressed; he merely wanted "to get this thing cleared up with this missing money." Thus, the only indication Alexander had that the investigation might be criminal was the reading of his Miranda rights in the middle of his first interview, the beginning of his second interview, and the beginning of the exam. The reassurances from Eilers came after those warnings. The fact that Eilers, as sheriff, could not compel Alexander to take the exam, but that Eilers was able to use his position as employer to do so, further supports Alexander's belief. Additionally, no criminal charges were ever filed due to the lack of admissible evidence. (The polygraph was the sole evidence against him.) The only action taken by Eilers was employment related: suspending and firing Alexander. Sheriff Eiler's comments to Alexander at the time of his suspension indicate Eiler's concern was more to be rid of a dishonest employee rather than to solve a crime or recover stolen property:

> * * * and he made the comment that you can go ahead and file your * * * grievance, or whatever, but I can't have you working here.

If the underlying investigation is criminal, Alexander should have been protected by procedural and substantive due process; if internal, by Minn.Stat. § 181.75. Either avenue would have prevented Eilers from compelling Alexander to take the exam. Section 181.75 would have prevented Eilers from even requesting the exam. Alexander's unique position as an employee of a police department suspected of a crime blurs the distinction between which actions were official and criminal, and those that were internal and employment related.

Considering the conflicting evidence on this question, it cannot be said, as a matter of law, that there is no genuine issue of material fact. This is especially true where a number of standard procedures for criminal investigations were not followed and where assurances were given by the sheriff/employer that no charges would be pressed. The type of coercion used—the power of an employer over an employee—is precisely the type of violation of rights § 181.75 and the repeal of § 181.77 are designed to remedy. *See State v. Century Camera, Inc.,* 309 N.W.2d 735, 741 (Minn. 1981). As State Senator Doty noted:

> What I want to avoid in this bill is the innocent employee, something's missing, and everybody takes the test so that they can purportedly find out who did it.

This is the very situation before us now. To the extent that there is credible conflicting testimony which establishes significant doubt as to the character of the investigation conducted in this case, the issue should have been submitted to the trier of fact.

DECISION

Reversed and remanded.