Trinka M. HANSON, Appellant,

v.

BROTHERS AND ONE, INC., d/b/a Clearwater Corners, et al., Defendants,

Chief Deputy James Powers, et al., Respondents.

No. C2–92–751.

Court of Appeals of Minnesota.

Sept. 22, 1992.

Review Denied Nov. 17, 1992.

James H. Kaster, Nichols, Kaster & Anderson, Minneapolis, for appellant.

Robert G. Haugan, Johnson & Lindberg, P.A., Minneapolis, for respondents.

Considered and decided by SCHUMACHER, P.J., and PARKER and DAVIES, JJ.

## OPINION

PARKER, Judge.

Trinka M. Hanson appeals from the district court's grant of summary judgment dismissing her suit against James Powers for alleged violation of Minn.Stat. § 181.75, subd. 1 (1990), the "polygraph statute." Hanson argues that the district court erred in finding that Powers conducted the polygraph test as part of a criminal investigation rather than on behalf of her employer. She also asserts error in the district court's determination that Powers did not interpret the results of the polygraph test in violation of the polygraph statute. We reverse.

## FACTS

Hanson was employed as a bartender at the Clearwater Corners bar in Clear Lake, Minnesota. The owners of the bar are Brothers and One, a Minnesota corporation, and Rudy Zimmer. On October 12, 1989, after Hanson finished her shift and closed the bar, she, her boyfriend, Jeffrey Olson, and her boyfriend's co-worker, Steven Armijo, drank several beers inside the bar and left several hours later. No one else was present.

Later that morning, Zimmer and Jordie Stay, the bar's manager, found money missing and summoned Hanson to the bar. After Hanson and Olson arrived together at the bar, Zimmer accused Hanson of stealing the money; she denied taking it. Armijo, who was summoned later, was also accused of theft. Hanson stated that Zimmer said he had a friend in the sheriff's department and that he would call the deputy to the bar. Zimmer then telephoned the sheriff's department to report the theft. Hanson testified that Zimmer told her, "Powers is going to get here and he is going to take all of you down to jail, and you guys will get what's coming to you."

Powers, a chief deputy with the department, responded to the call and questioned Zimmer and Stay in an office in the bar. Hanson testified that "Rudy [Zimmer] was really angry, so he was yelling." She asserts she overheard Zimmer telling Powers, "I want fingerprints taken off of this drawer, and I want those guys to take polygraphs. I want you to take those guys to jail and book them."

Hanson testified that she overheard Powers respond, "I can give them polygraph examinations. Unless we file a charge on them, we can't take them to jail." She further testified she heard Zimmer tell Powers that all he wanted was his money back and that if he got the money back, he would be willing to forget the whole thing.

After questioning Zimmer and Stay, Powers questioned Hanson in his squad car. Hanson again denied taking the money. She testified that Powers told her:

> We would like to get this whole situation cleared up. Rudy wants you take a polygraph examination * * * Well, usually I'm not supposed to administer polygraphs at this point, but considering the circumstances and if you are willing to volunteer I will administer the test.

Hanson said she would volunteer "if that's the only thing that's going to clear this up,

I will," and Powers said, "That is." She then made an appointment for a polygraph test the next day.

Hanson further testified that Powers, after making polygraph appointments for her and her friends, told them, "Well, Rudy is willing to forget this whole thing. We can clear this all up if you guys give the money back." All three again denied taking the money.

Powers, in a deposition, denied he discussed polygraphs with Zimmer at all and denied he requested polygraphs on behalf of Zimmer. Powers administered polygraph tests the next day at the Wright County Courthouse to Hanson and four others. Powers testified that as all five passed the polygraph, the investigation was at a standstill, and thus no arrests had been made and no charges brought.

After Hanson passed the polygraph, she asked Powers, "Well, do I assume that I'm fired, or do I call them?" She testified that Powers said, "Well, I'll call them and tell him that you passed the polygraph, but it is your responsibility to call them and find out if they expect you to come in still." She testified that she "let Powers call Jordie and let Jordie know" that she and her friends had passed the polygraph. Although Powers testified on cross-examination that he offered to telephone Hanson's employer, he said on direct that he only called Hanson's employer at her request. It is undisputed that Powers telephoned Hanson's employer and relayed the results of the test. Hanson did not regain her job.

Hanson filed a lawsuit against her employers, Zimmer and Brothers and One, and against Powers and Wright County, alleging defamation and violation of Minn.Stat. § 181.75. She eventually settled with Zimmer and Brothers and One.

The trial court granted summary judgment in favor of Powers and Wright County. In its order, under the heading "Findings of Fact," the court stated:

1. The polygraph test administered to Plaintiff by Defendant Chief Deputy James Powers was part of a criminal investigation and was not adminis-

tered for the internal use of a business.

2. The polygraph was not sold to or interpreted for Plaintiff's employer as contemplated by Minn.Stat. § 181.75, as releasing of polygraph results to Plaintiff's employer was requested by Plaintiff.

This appeal followed.

## ISSUES

1. Did the district court err in determining that there was no genuine issue of material fact as to whether Powers administered the polygraph test as part of a criminal investigation?

2. Did the district court err in determining there was no genuine issue of material fact as to whether Powers sold or interpreted the test to Hanson's employer?

## DISCUSSION

■ On appeal from a summary judgment, this court must determine (1) whether there are any genuine issues of material fact, and (2) whether the trial court erred in its application of the law. *City of Virginia v. Northland Office Properties, Ltd. Partnership,* 465 N.W.2d 424, 427 (Minn.App. 1991), *pet. for rev. denied* (Minn. Apr. 18, 1991). The reviewing court "must take a view of the evidence most favorable to the one against whom the [summary judgment] motion was granted." *Abdallah, Inc. v. Martin,* 242 Minn. 416, 424, 65 N.W.2d 641, 646 (1954).

### I

The central issue is whether there is a genuine issue of material fact regarding Powers's request for polygraph tests. We conclude the district court made a finding on disputed facts material to this genuine issue and thus erred in granting summary judgment.

Minn.Stat. § 181.75, subd. 1, prohibits employers from directly or indirectly soliciting polygraph tests from their employees. The statute also prohibits the selling or interpreting of polygraph tests by individuals who know that an employer has

solicited such a test. Minnesota courts have expressed doubts about the accuracy of polygraph tests. *State v. Century Camera, Inc.*, 309 N.W.2d 735, 743, n. 13 (Minn.1981). The legislature has prohibited employers from soliciting polygraph tests from employees because of the inherently coercive effect of the use of polygraphs on vulnerable employees. The legislature, in prohibiting others from requesting polygraphs on behalf of an employer, recognized that an element of coercion is always present, regardless of whether the employer requests the test directly or indirectly through an agent. *Kamrath v. Suburban Nat. Bank*, 363 N.W.2d 108, 111 (Minn. App.1985).

◾ The statute is intended to protect an employee's expectation of privacy, to discourage demeaning an individual by administering such an intrusive test, and to avoid coercion of employees by employers requesting a polygraph. *Century Camera, Inc.*, 309 N.W.2d at 743.

◾ Although the statute prohibits solicitation of polygraph tests by *employers*, it does not expressly permit or forbid requests for such tests by police officers as part of a criminal investigation. Despite concerns as to the effectiveness and intrusiveness of polygraph tests, Minnesota courts have concluded that it is permissible for police officers to use polygraph tests as part of a criminal investigation. *State v. Kolander*, 236 Minn. 209, 221, 52 N.W.2d 458, 465 (1952); *Alexander v. Eilers*, 422 N.W.2d 312, 314 (Minn.App.1988) (interpreting legislative history). Indeed, the courts recognize the importance of polygraph tests as a tool of criminal investigation. *Id.*

◾ Even police officers, however, are governed by the polygraph statute and may not administer polygraph tests on behalf of an employer.

In *Alexander* this court examined the use of polygraph tests by a police department in an investigation of a department employee. *Alexander*, 422 N.W.2d at 314. There, the trial court had granted summary judgment on grounds that the department

had conducted a criminal investigation, and thus the statute prohibiting polygraph tests by employers did not apply.

This court determined that because the character of the investigation was uncertain, the trial court should not have granted summary judgment. *Id.* at 315. We noted that if the department had conducted a criminal investigation, it would have been required to follow standard investigatory procedure, for example, giving a *Miranda* warning and advising suspects the test is voluntary. *Id.* The department's failure to follow standard investigatory procedure indicated that perhaps it had indeed conducted an internal investigation as an employer. *Id.*

◾ The Eighth Circuit has outlined minimum procedures a police officer conducting a criminal investigation should follow before administering a polygraph: advise the suspect of the right to refuse to take the test, to discontinue it at any point, and to decline to answer individual questions. *United States v. Little Bear*, 583 F.2d 411, 414 (8th Cir.1978).

◾ In this case, as in *Alexander*, the nature of the investigation is uncertain. The evidence is not dispositive of whether Powers was conducting a criminal investigation or acting on behalf of the employer. Hence, it was error for the trial court to grant summary judgment.

Although Powers testified he was conducting an investigation and denied that he acted on behalf of Hanson's employer, a genuine issue of material fact was created when Hanson presented her deposition testimony that she overheard Powers agreeing to give the polygraphs at her employer's request and that he so stated to her during the interview in the squad car.

◾ The district court, in granting summary judgment in favor of Powers despite such conflicting testimony, essentially found that Powers' deposition testimony was more credible than Hanson's. However, evaluation of a witness's credibility should be reserved for trial and not for summary judgment. *See Hasan v. Mc-*

*Donald's Corp.*, 377 N.W.2d 472, 475 (Minn.App.1985).

The record reveals few facts that would show whether a criminal investigation was being conducted. For example, the record does not disclose whether Powers administered *Miranda* warnings and further advised Hanson of applicable fifth amendment rights as suggested in *United States v. Little Bear,* the presence of which might indicate that Powers was conducting a criminal investigation. We must therefore infer that there is a genuine issue of material fact as to whether Powers gave a *Miranda* warning or other warnings before administering the polygraph. *See Rathbun v. W.T. Grant Co.,* 300 Minn. 223, 230, 219 N.W.2d 641, 646 (1974) (any doubt regarding the existence of a genuine fact issue will be resolved in favor of its existence).

The similarity of the facts of this case and the facts of *Alexander* further support our conclusion that the nature of the investigation is unclear.

For example, in *Alexander* the sheriff assured the plaintiff that no charges would be pressed and that he merely wanted "to get this thing cleared up with this missing money." *Alexander,* 422 N.W.2d at 315. These words are almost identical to the ones Hanson testified Powers used: "We would like to get this whole situation cleared up. Rudy wants you to take a polygraph examination." Powers, according to Hanson, also implied that no charges would be brought: "Well, Rudy is willing to forget this whole thing. We can clear this all up if you guys give the money back."

This court is troubled by the implications of Hanson's testimony. If her statements are true, this case illustrates precisely the unjust coercion that Minn.Stat. § 181.75 is designed to prevent. This employee may have faced the combined coercion of her employer and a police officer asking her to take a polygraph. Few individuals could be expected to withstand such pressure. Moreover, we believe the legislature did not condone police officers being placed in the position of having to give polygraphs on behalf of employers.

## II

Hanson also argues that Powers violated the statute by interpreting the polygraph test for her employer.

Minn.Stat. § 181.75, subd. 1 (1990), prohibits individuals who know that an employer has requested a polygraph from selling or interpreting polygraph tests for the employer. Minn.Stat. § 181.76 (1990) prohibits individuals from disclosing the results of polygraph tests of another individual. The statute reads as follows:

No person shall disclose that another person has taken a polygraph or any test purporting to test honesty or the results of that test except to the individual tested. *If such a test is given after August 1, 1973 and at the employee's request,* the results may be given only to persons authorized by the employee to receive the results. A person who violates this section is guilty of a misdemeanor.

(Emphasis supplied.)

There is no dispute that Powers telephoned Hanson's employer to tell him the results of the polygraph. Powers argues, however, that Hanson authorized the disclosure. There is some dispute as to whether Hanson actively authorized the disclosure or whether she merely assented to Powers' suggestion that he telephone her employer. Hanson testified that Powers asked her if she wanted him to call her employer. She testified that she *"let"* him call her employer.

Under the statute, even if an employee authorizes disclosure, an individual may not disclose the test results *unless the test was given at the employee's request.* Even if Hanson authorized the disclosure, there is a sufficient dispute as to whether the polygraph test was given at Hanson's request, at the employer's request, or at Powers's request, and thus there is a genuine issue of material fact. We conclude the district court erred in granting summary judgment on this issue.

## DECISION

The district court erred in granting summary judgment to Powers, because it essentially made findings of fact from disputed testimony that Powers requested the polygraph test as part of a criminal investigation and that Hanson requested Powers to release the results to her employer.

Reversed.