Joan M. NICHOLS, Respondent,

v.

STATE of Minnesota, OFFICE OF the SECRETARY OF STATE, et al., Appellants.

No. A13–0529.

Court of Appeals of Minnesota.

Jan. 21, 2014.

Review Granted March 26, 2014.

Robert M. McClay, McClay Alton, P.L.L.P., St. Paul, MN, for respondent.

Lori Swanson, Attorney General, Kristyn Anderson, Assistant Attorney General, St. Paul, MN, for appellants.

Considered and decided by JOHNSON, Presiding Judge; RODENBERG, Judge; and CHUTICH, Judge.

## OPINION

JOHNSON, Judge.

Joan M. Nichols was employed briefly as the communications director for the Office of the Secretary of State. She alleges that she was induced to accept the job offer by appellants' false representations concerning the duties of the position. She alleges both common-law and statutory claims. The district court granted in part and denied in part appellants' motion to dismiss Nichols's claims on immunity grounds.

In this interlocutory appeal, we are asked to decide whether the state is immune from suit on Nichols's statutory claim of false inducement of employment, which authorizes a prevailing plaintiff to recover not only compensatory damages but also attorney fees. We conclude that the doctrine of sovereign immunity protects the state from suit on that statutory claim. Therefore, we reverse the district court's denial of appellants' motion to dismiss count 1 of Nichols's complaint.

## FACTS

In October 2011, Nichols was living in Ohio but seeking to relocate to Minnesota. She responded to an on-line posting for the position of communications director in the Office of the Minnesota Secretary of State (OSS), the governmental office responsible for administering elections and preserving documents filed with the state, among other things.

In early November, Nichols was interviewed via telephone by Beth Fraser, the OSS's director of government affairs. Nichols later was interviewed in Minnesota by the secretary of state, Mark Ritchie, and members of his staff. After Nichols returned to Ohio, Fraser offered her the position, and she accepted. She began her employment on January 4, 2012, subject to a probationary period. Her employment ended on February 19, 2012, when her probationary status was deemed non-certified.

In August 2012, Nichols commenced this action against the OSS, Ritchie, and Fraser. In her complaint, she alleges that she was given duties that were inconsistent with the representations made to her during her interviews. Nichols alleges that she would not have accepted the position if she had known that the representations made to her were false. She alleges five claims for relief: (1) false inducement of employment, pursuant to sections 181.64 and 181.65; (2) false inducement of employment by individuals acting in their individual capacities, pursuant to sections 181.64 and 181.65; (3) common-law fraudulent inducement; (4) common-law fraudulent concealment; and (5) common-law negligent misrepresentation.

In September 2012, the OSS, Ritchie, and Fraser moved to dismiss the complaint for failure to state a claim upon which relief can be granted. *See* Minn. R. Civ. P. 12.02(e). They argued that Nichols's statutory claims are barred by sovereign immunity and that her common-law claims are barred by official immunity. In January 2013, the district court granted the motion with respect to counts 2 and 5 but denied the motion with respect to counts 1, 3, and 4. In February 2013, the OSS, Ritchie, and Fraser requested leave to file a motion to reconsider, which the district court denied. *See* Minn. R. Gen. Pract. 115.11.

The OSS, Ritchie, and Fraser bring this interlocutory appeal. They challenge only the district court's denial of their motion to dismiss with respect to count 1.

## ISSUE

Does the doctrine of sovereign immunity protect the state from suit on a claim of false inducement of employment under sections 181.64 and 181.65 of the Minnesota Statutes?

## ANALYSIS

Appellants argue that the district court erred by denying their motion to dismiss count 1 on the ground of the state's sovereign immunity. The parties agree that, with respect to count 1, Ritchie and Fraser are entitled to the protections of sovereign immunity to the same extent as the OSS. This court applies a *de novo* standard of review to a district court's determination of a defendant's immunity and to matters of statutory interpretation. *Swenson v. Nickaboine,* 793 N.W.2d 738, 741 (Minn. 2011); *Johnson v. State,* 553 N.W.2d 40, 45 (Minn.1996).

### A.

■ Count 1 of Nichols's complaint alleges that appellants fraudulently induced her to accept employment in violation of sections 181.64 and 181.65 of the Minnesota Statutes. The first of those two statutes provides:

> It shall be unlawful for any person, partnership, company, corporation, association, or organization of any kind, doing business in this state, directly or through any agent or attorney, to induce, influence, persuade, or engage any person to change from one place to another in this state, or to change from any place in any state, territory, or country to any place in this state, to work in any branch of labor through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning the kind or character of such work.... Any such unlawful acts shall be deemed a false advertisement or misrepresentation for the purposes of this section and section 181.65.

Minn.Stat. § 181.64 (2012). The second of the two statutes provides:

> Any person, firm, association, or corporation violating any provision of section 181.64 and this section shall be guilty of a misdemeanor. Any person who shall be influenced, induced, or persuaded to enter or change employment or change a place of employment through or by means of any of the things prohibited in section 181.64, shall have a right of action for the recovery of all damages sustained in consequence of the false or deceptive representations, false advertising, or false pretenses used to induce the person to enter into or change a place of employment, against any person, firm, association, or corporation directly or indirectly causing such damage; and, in addition to all such actual damages such person may have sustained, shall have the right to recover such reasonable attorney fees as the court shall fix, to be taxed as costs in any judgment recovered.

Minn.Stat. § 181.65 (2012). The statutory cause of action authorized by sections 181.64 and 181.65 is generally consistent with the common-law cause of action for fraudulent inducement. *See Rognlien v. Carter,* 443 N.W.2d 217, 220 (Minn.App. 1989) (stating elements of common-law claim), *review denied* (Minn. Sept. 21, 1989). The statutory cause of action, however, has two additional features. First, a prevailing plaintiff may recover attorney fees from a defendant. Minn.Stat. § 181.65. Second, fraudulent inducement

may constitute a misdemeanor offense. *Id.* Because Nichols also has alleged a common-law fraudulent-inducement claim, the practical effect of this appeal is to determine whether Nichols may seek to recover attorney fees if she prevails on her claims at trial.

## B.

■ The doctrine of sovereign immunity provides that a state is immune from suit in its own courts unless the state has consented to be sued. *Alden v. Maine,* 527 U.S. 706, 715, 119 S.Ct. 2240, 2247–48, 144 L.Ed.2d 636 (1999); *Janklow v. Minnesota Bd. of Exam'rs for Nursing Home Adm'rs,* 552 N.W.2d 711, 715 (Minn. 1996). The doctrine derives from the ancient notion that the King was infallible and that "the Crown could not be sued without consent in its own courts." *Alden,* 527 U.S. at 715, 119 S.Ct. at 2247; *see also Janklow,* 552 N.W.2d at 715. As Hamilton explained, "It is inherent in the nature of sovereignty not to be amenable to the suit of an individual *without its consent.*" The Federalist No. 81, at 487 (Alexander Hamilton) (Clinton Rossiter ed.1961). In addition to its theoretical rationale, the doctrine of sovereign immunity also has practical importance. "Today, as at the time of the founding," private suits against states for money damages may place "strain on the States' ability to govern in accordance with the will of their citizens." *Alden,* 527 U.S. at 750–51, 119 S.Ct. at 2264. The United States Supreme Court has further noted that liability for attorney fees "could create staggering burdens" on a state's scarce resources. *Id.* at 750, 119 S.Ct. at 2264.

The Minnesota caselaw concerning this state's sovereign immunity is consistent with the federal authorities. The Minnesota Supreme Court first recognized the state's sovereign immunity in 1877. *See St. Paul & Chicago Ry. v. Brown,* 24 Minn. 517, 574–75 (1877), *cited in Lund v. Commissioner of Pub. Safety,* 783 N.W.2d 142, 143 (Minn.2010). Approximately a century later, the supreme court abolished the state's sovereign immunity from common-law tort claims. *Nieting v. Blondell,* 306 Minn. 122, 132, 235 N.W.2d 597, 603 (1975). The following year, the legislature expressly waived the state's sovereign immunity with respect to common-law tort claims, subject to certain limitations. Tort Claims Act, 1976 Minn. Laws ch. 331, § 33, at 1293 (codified at Minn.Stat. § 3.736); *see also Rico v. State,* 472 N.W.2d 100, 106 (Minn.1991).

■ Notwithstanding the change in the law with respect to common-law tort claims, the state's sovereign immunity with respect to statutory claims has remained essentially unchanged since 1877. In 1941, the legislature enacted a statute that identifies two means by which the state's sovereign immunity may be waived with respect to a statutory claim: "The state is not bound by the passage of a law [1] unless named therein, or [2] unless the words of the act are so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." 1941 Minn. Laws ch. 492, § 27, at 914 (codified at Minn.Stat. § 645.27). Since 1941, the supreme court's caselaw has followed the statute by continuing to recognize that the doctrine of sovereign immunity protects the state from statutory claims unless the immunity is waived, and by recognizing that the immunity may be waived only if the state is expressly mentioned in a claim-creating statute or if the legislature's intention to waive the state's sovereign immunity otherwise is plain, clear, and unmistakable. *Lund,* 783 N.W.2d at 143; *Holmberg v. Holmberg,* 588 N.W.2d 720, 727 (Minn.1999); *Stoecker v. Moeglein,* 269 Minn. 19, 24, 129 N.W.2d 793, 797 (1964);

*State v. Bentley,* 224 Minn. 244, 247, 28 N.W.2d 770, 771 (1947).

The Minnesota caselaw also is consistent with the federal caselaw concerning waivers of sovereign immunity. The federal caselaw requires that a waiver of sovereign immunity "must be unequivocally expressed in statutory text." *Lane v. Pena,* 518 U.S. 187, 192, 116 S.Ct. 2092, 2096, 135 L.Ed.2d 486 (1996). Furthermore, in determining whether immunity has been waived, "[a]ny ambiguities in the statutory language are to be construed in favor of immunity ... so that the Government's consent to be sued is never enlarged beyond what a fair reading of the text requires." *F.A.A. v. Cooper,* — U.S. ——, 132 S.Ct. 1441, 1448, 182 L.Ed.2d 497 (2012). In both the Minnesota and the federal systems, immunity from suit is an issue "that our constitutional system of separation of powers assigns to the legislative branch to decide as a matter of public policy." *Johnson,* 553 N.W.2d at 43; *see also Raygor v. Regents of Univ. of Minn.,* 534 U.S. 533, 544, 122 S.Ct. 999, 1006, 152 L.Ed.2d 27 (2002).

## C.

Two opinions of the Minnesota appellate courts are especially relevant to our application of the doctrine of sovereign immunity to Nichols's claim because they concern employment-related claims against the state.

First, in *Stoecker,* an officer in the National Guard was killed in active duty, leaving a widow and four children, who sued the state for compensation under a state statute. 269 Minn. at 20–21, 129 N.W.2d at 794–95 (citing Minn.Stat. §§ 192.38, .39 (1964) (repealed in 1965)). The officer's dependents also sought a 25% penalty under a different statute on the ground that the state "unreasonably or vexatiously delayed payment." *Id.* at 23–

24, 129 N.W.2d at 796–97 (quoting Minn. Stat. § 176.225 (1961)). The supreme court held that the family could recover compensation under section 192.39 but could not recover the 25% penalty under section 176.225. *Id.* Notwithstanding the fact that the state is treated as an employer for some purposes in chapter 176, *see* Minn.Stat. § 176.011, subd. 10 (1961), the supreme court held that the language of section 176.255 does not reflect the state's consent to be sued because it is not so " 'plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature.' " *Id.* at 24, 129 N.W.2d at 797 (quoting Minn.Stat. § 645.27). The supreme court explained that the penalty provision of section 176.225 "should not be extended to the state itself in the absence of a clear directive by the legislature." *Id.*

Second, in *Dicks v. Minnesota Dep't of Admin.,* 627 N.W.2d 334 (Minn.App.2001), *review denied* (Minn. July 24, 2001), state employees sought payment of wages pursuant to the Minnesota Prevailing Wage Act (MPWA). *Id.* at 335 (citing Minn.Stat. §§ 177.41–.44 (2000)). The MPWA defines "employer" to mean "an individual, partnership, association, corporation, business trust, or other business entity that hires a laborer, worker, or mechanic." Minn.Stat. § 177.42. This court concluded that the state did not consent to be sued under the MPWA because "[t]here is no mention of the creation of any liability of the state to its employees." *Dicks,* 627 N.W.2d at 337. We reasoned that the legislature does not create implied causes of action against the state; rather, the legislature must do so either expressly or with language that is " 'so plain, clear, and unmistakable as to leave no doubt as to [its] intention.' " *Id.* (quoting Minn.Stat. § 645.27).

## D.

The question in this case is whether the legislature waived the state's sover-

eign immunity from suit on a statutory claim of false inducement of employment under sections 181.64 and 181.65. Neither the district court nor Nichols suggests that the legislature waived the state's sovereign immunity with respect to sections 181.64 and 181.65 according to the first means, by expressly naming the state within the statute. *See* Minn.Stat. § 645.27; *Stoecker*, 269 Minn. at 24, 129 N.W.2d at 797; *Dicks*, 627 N.W.2d at 337. In this respect, sections 181.64 and 181.65 stand in contrast to at least 16 other sections of chapter 181 in which the legislature waived the state's sovereign immunity by expressly naming the state in statutes that give rise to a cause of action.[1] For example, a statute providing that an employer may be held liable for the improper payment of wages defines "employer" to mean "any person having one or more employees in Minnesota *and includes the state and any political subdivision of the state.*" Minn.Stat. § 181.171, subd. 4 (emphasis added). Similarly, a statute providing that salary or wages owed to a deceased former employee must be paid to the surviving spouse defines "employer" to mean "every person, firm, partnership, corporation, *the state of Minnesota, all political subdivisions,* and all municipal corporations." Minn.Stat. § 181.58 (emphasis added). In each of these employment-related statutes, the legislature has waived the state's sovereign immunity from suit with respect to that particular statutory claim according to the first type of waiver, an express waiver.

◼ Even in the absence of an express waiver, the state's sovereign immunity may be waived according to the second means, so long as the legislature has given a plain, clear, and unmistakable indication of its intention to subject the state to suit on a statutory claim. Minn.Stat. § 645.27; *Holmberg*, 588 N.W.2d at 727; *Stoecker*, 269 Minn. at 24, 129 N.W.2d at 797; *Dicks*, 627 N.W.2d at 337. But courts should be reluctant to conclude that the state has waived its sovereign immunity pursuant to the second means. *See Dicks*, 627 N.W.2d at 337. In fact, our research has failed to disclose any opinion in which a Minnesota appellate court concluded that the state's sovereign immunity from suit under a statutory claim was waived by the second means. We are inclined to take an especially cautious approach in this case in light of the fact that the legislature has expressly consented to suits against the state in 16 other sections of chapter 181 but has not expressly consented within the text of sections 181.64 and 181.65.

The district court denied appellants' motion on the ground that the language of sections 181.64 and 181.65 is " 'so plain, clear, and unmistakable as to leave no doubt' " that the legislature intended the statutes to apply to the state. (Quoting

---

1. *See* Minn.Stat. § 181.171, subd. 1, 4 (payment of wages); Minn.Stat. § 181.275, subd. 2a (regulating nurses' hours); Minn.Stat. § 181.58 (wages to surviving spouses); Minn.Stat. § 181.59 (prohibiting discrimination against contractors based on race, creed, or color); Minn.Stat. § 181.81 (age discrimination); Minn.Stat. § 181.931, subd. 3 (Whistleblower Act); Minn.Stat. § 181.937 (prohibiting retaliation for failure to contribute to charities and other organizations); Minn.Stat. § 181.939 (accommodations for nursing mothers); Minn.Stat. § 181.940, subd. 3 (parenting leave); Minn.Stat. § 181.945, subd. 1(c) (leave for bone-marrow donations); Minn.Stat. § 181.9456, subd. 1(c) (leave for organ donation); Minn.Stat. § 181.947, subd. 1(d) (leave for immediate family members of military personnel injured or killed in active service); Minn.Stat. § 181.948, subd. 1(d) (leave for immediate family members to attend military send-off or homecoming ceremonies); Minn.Stat. § 181.950, subd. 7 (drug testing); Minn.Stat. § 181.967, subd. 4 (qualified privilege from defamation in giving employment references); Minn.Stat. § 181.974, subd. 1(b) (2012) (genetic testing).

Minn.Stat. § 645.27.) The district court identified the appropriate criterion but misapplied it. The language of sections 181.64 and 181.65 does not plainly, clearly, or unmistakably disclose an intention by the legislature to waive the state's sovereign immunity from suit under those statutes. In fact, the language of sections 181.64 and 181.65 gives no indication that the legislature considered whether or how the statutes should apply to the state and gives no indication that the legislature, on behalf of the state, consented to be sued on a statutory claim of false inducement of employment. The statutes simply provide that certain generic categories of employers may be held liable under the statutes. In this way, the statutes in this case are similar to the statutes in *Stoecker* and *Dicks*. *Stoecker*, 269 Minn. at 24, 129 N.W.2d at 797; *Dicks*, 627 N.W.2d at 337. The opinions in those two cases illustrate that an expansive description of the type of employers that may be held liable is insufficient to constitute a waiver of the state's sovereign immunity from statutory claims in the absence of an express reference to the state. Likewise, in this case, because there is no indication in the text of sections 181.64 and 181.65 that the legislature consented to a suit against the state under those sections, the caselaw compels the conclusion that the legislature did not waive the state's sovereign immunity from suit under sections 181.64 and 181.65. *See Stoecker*, 269 Minn. at 24, 129 N.W.2d at 797; *Dicks*, 627 N.W.2d at 337.

The district court's analysis is erroneous because it focuses on the breadth of section 181.64, which applies to "any person, partnership, company, corporation, association, or organization of any kind, doing business in this state." Minn.Stat. § 181.64. The district court concluded that the state is within this category of defendants because it is an "organization ... doing business in this state." *See id.* The district court reasoned that the legislature intended sections 181.64 and 181.65 to "include all people and every organization that people are capable of forming without limitation" and that the statutes "left no human-created institution untouched." The district court further noted, "Carving the State of Minnesota and the OSS out of such a broad and all-encompassing statement of statutory coverage strains both logic and the English language."

█ The district court's reasoning might be appropriate if a conventional type of statutory interpretation were applicable. In that event, we would "give words and phrases their plain and ordinary meaning." *Fannie Mae v. Heather Apartments Ltd. P'ship*, 811 N.W.2d 596, 599 (Minn.2012). Furthermore, broad language in the statute would be interpreted broadly to give it its full meaning. *See, e.g., Olson v. Ford Motor Co.*, 558 N.W.2d 491, 494 (Minn. 1997) (interpreting phrase "any litigation . . . resulting from the use or operation of any motor vehicle" in Minn.Stat. § 169.685, subd. 4 (1996), by "look[ing] no further than the express language of the statute"). But a different type of analysis is required by the caselaw concerning waivers of sovereign immunity. The pertinent question is not whether a statute is, as a linguistic matter, broad enough to encompass the state; the pertinent question is whether the legislature has plainly, clearly, and unmistakably expressed its intention to waive the state's sovereign immunity so as to " 'leave no doubt' " that the state is subject to suit under a statute. *Holmberg*, 588 N.W.2d at 727 (quoting Minn.Stat. § 645.27). Under a proper analysis, statutory language that is broad and general is, contrary to the district court's reasoning, *less* likely, not *more* likely, to satisfy the rigorous test for ascertaining a legislative waiver of the state's sovereign immunity. *See* Minn.

Stat. § 645.27; *Holmberg,* 588 N.W.2d at 727; *Dicks,* 627 N.W.2d at 337–38.

The district court also erred by relying on this court's opinion in *Alexander v. Eilers,* 422 N.W.2d 312 (Minn.App.1988), a case in which an employee of a county sheriff's department sued the sheriff and the county under a statute that restricts an employer's freedom to administer polygraph tests. *Id.* at 314 (citing Minn.Stat. § 181.75, subd. 1 (1986)). The district court interpreted the *Alexander* opinion to say that the state is not immune from a statutory claim under section 181.75. Our opinion in *Alexander,* however, does not stand for the proposition that the state has waived its sovereign immunity from suit under section 181.75. As an initial matter, the *Alexander* case involved a suit against a county and a county sheriff, not a suit against the state. *Id.* at 313. More importantly, the court in *Alexander* did not consider the issue of sovereign immunity, apparently because the defendants did not assert an immunity defense. *See id.* at 313–15. Because the issue presented by appellants in this case was not before the court in *Alexander,* the *Alexander* opinion provides no authority for a conclusion that the state has waived its sovereign immunity with respect to the statutory claim authorized in sections 181.64 and 181.65. *See Skelly Oil Co. v. Commissioner of Taxation,* 269 Minn. 351, 371, 131 N.W.2d 632, 645 (1964) (stating that opinions must be read in light of "the specific controversy then before court"); *Chapman v. Dorsey,* 230 Minn. 279, 288, 41 N.W.2d 438, 443 (1950) (stating that opinions are not precedential on issues "never raised or called to the attention of the court").

Thus, the state has not waived its sovereign immunity from suit on a claim of false inducement of employment under sections 181.64 and 181.65. Accordingly, the OSS,

Ritchie, and Fraser are immune from suit on Nichols's first claim.

## DECISION

The district court erred by denying appellants' motion to dismiss with respect to count 1 of the complaint.

**Reversed.**

