STATE OF MINNESOTA

IN SUPREME COURT

A13-0529

Court of Appeals                                                                                    Anderson, J.

Joan M. Nichols,

            Appellant,

vs.                                                                                          Filed:  February 4, 2015
                                                                                             Office of Appellate Courts
State of Minnesota, Office of the Secretary
of State, et al.,

            Respondents.

_____

Robert M. McClay, McClay-Alton, P.L.L.P., Saint Paul, Minnesota, for appellant.

Lori Swanson, Attorney General, Michael Goodwin, Alethea M. Huyser, Assistant
Attorneys General, Saint Paul, Minnesota, for respondents.

Jenneane L. Jansen, Jansen & Palmer LLC, Minneapolis, Minnesota; and

Daniel J. Cragg, Eckland & Blando LLP, Minneapolis, Minnesota, for amicus curiae
Minnesota Association for Justice.

_____

S Y L L A B U S

        The Legislature did not plainly, clearly, and unmistakably waive sovereign

immunity for claims brought under Minn. Stat. §§ 181.64, .65 (2014).

        Affirmed.

1

O P I N I O N

ANDERSON, Justice.

The issue presented by this case is whether the State of Minnesota may be sued in tort under Minn. Stat. §§ 181.64 and 181.65 (2014). Because we conclude that the Legislature did not plainly, clearly, and unmistakably waive sovereign immunity for claims brought under sections 181.64 and 181.65, *see* Minn. Stat. § 645.27 (2014), we hold that Nichols may not sue the State under those provisions.

In October 2011 Joan Nichols, then living in Ohio, responded to an online posting for the position of communications director at the Minnesota Office of the Secretary of State (OSS). Nichols was invited to interview for the position. At the interview in November 2011, Nichols met with then-Secretary of State Mark Ritchie and then-Director of Governmental Affairs Beth Fraser. Nichols claims that the online job posting and statements made by Secretary Ritchie and Fraser during the interview included knowingly false representations about the duties of the position. Nichols alleges that these false representations were intended to induce her to resign her position in Ohio and accept the position at OSS. Nichols accepted the position at OSS but states she would not have done so had she known the representations were false.

Nichols began working at OSS on January 4, 2012, and her employment ended on February 19, 2012, when her contract was not renewed at the end of her probationary period. On September 19, 2012, Nichols sued respondents State of Minnesota, OSS, Secretary Ritchie, and Fraser, in Ramsey County District Court. In addition to common-

law tort claims, Nichols alleged statutory claims for "false statements as inducement to entering employment" under Minn. Stat. §§ 181.64 and 181.65.[1]

Respondents moved to dismiss all claims. *See* Minn. R. Civ. P. 12.02(e). They argued that claims against the State[2] under Minn. Stat. §§ 181.64 and 181.65 are barred by sovereign immunity because these sections neither name the State nor plainly, clearly, and unmistakably apply to the State, as required by Minn. Stat. § 645.27. The district court denied the motion to dismiss the common-law and statutory claims in part,[3] concluding as to the statutory claims that the broad language of sections 181.64 and 181.65 encompasses all private and governmental entities and therefore demonstrates the Legislature's intent to waive sovereign immunity. Respondents filed an interlocutory appeal with respect to Nichols's statutory claims, and the court of appeals reversed. *Nichols v. State*, 842 N.W.2d 20, 22 (Minn. App. 2014). The court of appeals concluded that the broad language of Minn. Stat. §§ 181.64 and 181.65 is insufficient by itself to subject the State to suit. *Nichols*, 842 N.W.2d at 27 (citing Minn. Stat. § 645.27).

---

[1] In the complaint, Nichols asserted that the claims under Minn. Stat. §§ 181.64 and 181.65 were permitted because the State waived sovereign immunity for statutory tort claims under the Tort Claims Act. *See* Minn. Stat. § 3.736, subd. 1 (2014). The parties did not address the application of the Tort Claims Act on appeal, however, so we decline to consider it here.

[2] For purposes of this opinion, claims against the State include claims against state offices and state officials acting in their official capacity.

[3] The district court dismissed claims against Secretary Ritchie and Fraser in their individual capacities, and those dismissals are not part of the appeal before our court.

We granted review on the issue of whether the State is immune from claims brought under Minn. Stat. §§ 181.64 and 181.65.

I.

When reviewing a motion to dismiss for failure to state a claim, we presume all of the facts contained in the complaint are true. *Martens v. Minn. Mining & Mfg. Co.*, 616 N.W.2d 732, 746 (Minn. 2000). Because the facts are undisputed for purposes of this appeal, and the question is one of statutory interpretation, our review is de novo. *Oslund v. Johnson*, 578 N.W.2d 353, 356 (Minn. 1998). The application of sovereign immunity is also a question of law, which we review de novo. *Sletten v. Ramsey Cnty.*, 675 N.W.2d 291, 299 (Minn. 2004).

"Our primary objective in interpreting statutory language is to give effect to the legislature's intent as expressed in the language of the statute." *Pususta v. State Farm Ins. Cos.*, 632 N.W.2d 549, 552 (Minn. 2001) (citing Minn. Stat. § 645.16 (2014)).

The doctrine of sovereign immunity, which precludes litigation against the state unless the state has consented to suit, developed from the principle that "the King can do no wrong."[4] *Nieting v. Blondell*, 306 Minn. 122, 125, 235 N.W.2d 597, 599 (1975); *see, e.g.*, *Alden v. Maine*, 527 U.S. 706, 715 (1999); *Janklow v. Minn. Bd. of Examiners for Nursing Home Adm'rs*, 552 N.W.2d 711, 715 (Minn. 1996). Sovereign immunity in Minnesota originated in common law. *Nieting*, 306 Minn. at 125, 235 N.W.2d at 600;

---

[4] Blackstone explains that the king "owes no kind of subjection to any other potentate upon earth"; therefore, "no suit or action can be brought against the king, even in civil matters, because no court can have jurisdiction over him." 1 William Blackstone, *Commentaries* *235.

4

*see St. Paul & Chi. Ry. Co. v. Brown*, 24 Minn. 517, 574 (1877) ("The exemption of the state from actions by its citizens is not based on any constitutional provision, but merely on grounds of public policy. . . . There can be no doubt that the legislature may waive such exemption . . . ."). The doctrine serves to protect the fiscal stability of government. *See Lienhard v. State*, 431 N.W.2d 861, 867 (Minn. 1988). Although we have abolished sovereign immunity with regard to common-law tort claims, *see Nieting*, 306 Minn. at 132, 235 N.W.2d at 603, the doctrine remains effective in many forms, including immunity from liability created by statute, which is, of course, subject to waiver by the Legislature.

In 1941 the Legislature enacted Minn. Stat. § 645.27, which describes under what circumstances the Legislature intends to waive sovereign immunity for statutory claims: "The state is not bound by the passage of a law [1] unless named therein, or [2] unless the words of the act are so plain, clear, and unmistakable as to leave no doubt as to the intention of the legislature." Minn. Stat. § 645.27.[5] In other words, sovereign immunity is waived only if the statute demonstrates the Legislature's express intent to allow suit against the State. *See Holmberg v. Holmberg*, 588 N.W.2d 720, 727 (Minn. 1999); *State v. Bentley*, 224 Minn. 244, 247, 28 N.W.2d 770, 771 (1947); *see also F.A.A. v. Cooper*, ___ U.S. ___, 132 S. Ct. 1441, 1448 (2012) ("[A] waiver of sovereign immunity must be 'unequivocally expressed' in statutory text."). Respondents, incorrectly, refer to section

---

[5] We note that Minn. Stat. § 645.27 pertains only to the State's immunity and is inapplicable to counties, cities, or other forms of government. Our decision here is solely concerned with State immunity.

5

645.27 as a *codification* of sovereign immunity from statutory claims; we have referred to section 645.27 as a "rule of construction."  *See Lienhard*, 431 N.W.2d at 864.  Chapter 645 is titled "Interpretation of Statutes and Rules," and section 645.27 is located in the subsection "Construction of Laws."  And although we stated in *Lund v. Commissioner of Public Safety*, 783 N.W.2d 142, 143 (Minn. 2010), that Minn. Stat. § 645.27 "codified . . . common-law immunity," we did not suggest that section 645.27 is a *source* of immunity.  Rather, section 645.27 provides a *framework* for interpreting whether a separate statutory provision waives sovereign immunity.

## II.

Nichols concedes that Minn. Stat. §§ 181.64 and 181.65 do not waive sovereign immunity by explicitly naming the State.  The issue then is whether the second prong of Minn. Stat. § 645.27 applies; in other words, whether the provisions "leave no doubt" as to the Legislature's "plain, clear, and unmistakable" intent to bind the State.  Section 181.64 provides:

> It shall be unlawful for any person, partnership, company, corporation, association, or organization of any kind, doing business in this state, . . . to induce, influence, persuade, or engage any person . . . to change from any place in any state, territory, or country to any place in this state, to work in any branch of labor through or by means of knowingly false representations, whether spoken, written, or advertised in printed form, concerning the kind or character of such work . . . .  Any such unlawful acts shall be deemed a false advertisement or misrepresentation for the purposes of this section and section 181.65.

A violation of section 181.64 is penalized by section 181.65:

> Any person, firm, association, or corporation violating any provision of section 181.64 and this section shall be guilty of a misdemeanor.  Any person who shall be influenced, induced, or persuaded to enter or change

6

employment or change a place of employment through or by means of any of the things prohibited in section 181.64, shall have a right of action for the recovery of all damages sustained in consequence of the false or deceptive representations, false advertising, or false pretenses used to induce the person to enter into or change a place of employment, against any person, firm, association, or corporation directly or indirectly causing such damage; and, in addition to all such actual damages such person may have sustained, shall have the right to recover such reasonable attorney fees as the court shall fix, to be taxed as costs in any judgment recovered.[6]

We begin by examining the language of the statutes. *See* Minn. Stat. § 645.08 (2014). Nichols argues that the language of sections 181.64 and 181.65 demonstrates a plain, clear, and unmistakable intent to allow claims against the State. In particular, Nichols points to the phrase "organization of any kind" in section 181.64, asserting that the breadth of the phrase necessarily includes the State. Arguing that a governmental entity is an "organization," Nichols also contends that the phrase "organization of any kind" encompasses all public entities, including OSS or the State. Respondents, in contrast, argue that the general terms used in sections 181.64 and 181.65 do not plainly, clearly, and unmistakably demonstrate an intent to include the State.

We conclude that the broad categories of entities listed in Minn. Stat. §§ 181.64 and 181.65 do not waive the State's immunity from suit under those provisions. Nichols urges us to construe the word "organization" according to its "common and approved usage," *see* Minn. Stat. § 645.08(1), which she argues could be any "body of persons formed for a common purpose." *Black's Law Dictionary* 1274 (10th ed. 2014).

___

[6] The Legislature enacted Minn. Stat. §§ 181.64 and 181.65 in 1913. Act of Apr. 28, 1913, ch. 544, 1913 Minn. Laws 783. In 1923 the Legislature amended section 181.65 to allow recovery of damages and attorney fees. Act of Apr. 16, 1923, ch. 272, § 2, 1923 Minn. Laws 364, 364-65.

Although an expansive definition of "organization" *could* encompass the State, it could just as easily refer only to business or other nongovernmental entities. That "expansiveness" really has no practical limitation; "organization" could mean any flavor of corporation, association, partnership or, indeed, as Nichols argues, any collection of individuals, small or large, gathered together for a common purpose. The Legislature has applied the brakes to the kind of analysis Nichols urges here by requiring a waiver of sovereign immunity to be plain, clear, and unmistakable. *See* Minn. Stat. § 645.27; *Holmberg*, 588 N.W.2d at 727 (concluding that the Marriage Dissolution Award of Attorney Fees statute, Minn. Stat. § 518.14, subd. 1 (2014), does not apply to the State because there was no clear indication that the Legislature so intended).

We also note that the Legislature knows how to waive sovereign immunity in statutory provisions and often distinguishes between statutes that apply to the State and those that do not. Indeed, the Legislature has named the State in at least 14 provisions within the chapter containing the statutes at issue here. *See* Minn. Stat. § 181.171, subd. 4 (2014) (payment of wages); Minn. Stat. § 181.275, subd. 2a (2014) (regulating nurses' overtime hours); Minn. Stat. § 181.58 (2014) (wages to surviving spouses); Minn. Stat. § 181.931, subd. 3 (2014) (Whistleblower Act); Minn. Stat. § 181.937 (2014) (prohibiting retaliation for failure to contribute to charities and other organizations); Minn. Stat. § 181.939(c) (2014) (accommodations for nursing mothers); Minn. Stat. § 181.940, subd. 3 (2014) (parenting leave); Minn. Stat. § 181.945, subd. 1(c) (2014) (bone-marrow donation leave); Minn. Stat. § 181.9456, subd. 1(c) (2014) (organ-donation leave); Minn. Stat. § 181.947, subd. 1(d) (2014) (leave for immediate family members of military

8

personnel injured or killed in active service); Minn. Stat. § 181.948, subd. 1(d) (2014) (leave to attend military ceremonies); Minn. Stat. § 181.950, subd. 7 (2014) (drug and alcohol testing); Minn. Stat. § 181.967, subd. 1(5) (2014) (employment references); Minn. Stat. § 181.974, subd. 1(b) (2014) (genetic testing). Given that the Legislature knows how to plainly and clearly waive sovereign immunity, we cannot conclude it did so in sections 181.64 and 181.65 by using a broad, vague term such as "organization."

Two of these provisions are particularly relevant. Minnesota Statutes § 181.58, like Minn. Stat. § 181.64, applies to "every person, firm, partnership, [and] corporation." But instead of the generic phrase "organization of any kind," section 181.58 further defines "employer" as specifically including "the state of Minnesota, all political subdivisions, and all municipal corporations." The Legislature therefore understood that broad language is generally insufficient to waive sovereign immunity, and added the additional phrase in section 181.58 in order to do so. *See Nelson v. McKenzie-Hague Co.*, 192 Minn. 180, 182, 256 N.W. 96, 97 (1934) ("[T]he general words of a statute ought not to include the government, or affect its rights, unless that construction be clear and indisputable upon the text of the act." (quoting *United States v. Hoar*, 26 F. Cas. 329, 330 (C.C.D. Mass. 1821) (No. 15,373))), *overruled on other grounds by Lowry Hill Props., Inc. v. Ashbach Constr. Co.*, 291 Minn. 429, 436-37, 194 N.W.2d 767, 772 (1971).

The Legislature also knows how to amend statutes to add a waiver of sovereign immunity. The original version of Minn. Stat. § 181.13, enacted in 1919, applied broadly to "any person, firm, company, association or corporation employing labor within this

9

state." Act of Apr. 4, 1919, ch. 175, § 1, 1919 Minn. Laws 174, 174. This statute, like Minn. Stat. §§ 181.64 and 181.65, was enacted at a time when few limits to sovereign immunity existed, and the State could not be sued without its express consent. *See, e.g.*, *In re Delinquent Real Estate Tax Proceedings Against Lands in Polk Cnty.*, 182 Minn. 437, 441, 234 N.W. 691, 693 (1931) ("Without its effective consent, 'the state cannot be subjected to the jurisdiction of the courts, nor be compelled to defend in them.' " (quoting *Sanborn v. City of Minneapolis*, 35 Minn. 314, 318, 29 N.W. 126, 127 (1886))). The Legislature subsequently amended section 181.13 to apply to "any employer employing labor within this state" and defined "employer" in section 181.71 as "includ[ing] the state and any political subdivision of the state." Act of May 2, 1997, ch. 83, §§ 5, 7, 1997 Minn. Laws 463, 464-65 (codified as amended at Minn. Stat. §§ 181.13, .171, subd. 4 (2014)). That the Legislature did not similarly amend Minn. Stat. §§ 181.64 and 181.65 demonstrates that it did not intend to allow a cause of action against the State under these provisions.

Finally, Nichols argues that because Minn. Stat. §§ 181.64 and 181.65 apply to parties engaged in an employer-employee relationship, and the State is the largest employer in Minnesota, it would be nonsensical to exclude the State from liability under those provisions. But the Legislature may choose to recognize the State as an employer while preserving sovereign immunity from certain types of tort liability. In *Stoecker v. Moeglein*, for example, we concluded that although the State is an employer for purposes of the Workers' Compensation Act, *see* Minn. Stat. § 176.011, subd. 10 (2014), the penalty provision for "unreasonably or vexatiously delayed payment" is inapplicable "in

the absence of a clear directive by the legislature." 269 Minn. 19, 24, 129 N.W.2d 793, 796-97 (1964) ("The purpose of the penalty provision is to deter *private employers and liability carriers* from pursuing dilatory tactics . . . ." (emphasis added)). In other words, the Legislature intended to waive sovereign immunity from certain employment statutes but not from others. *See id.*; *see also Dicks v. Minn. Dep't of Admin.*, 627 N.W.2d 334, 337 (Minn. App. 2001) (concluding that state employees cannot bring an action under the Minnesota Prevailing Wage Act, even if an action would be allowed against a private employer), *rev. denied* (Minn. July 24, 2001).

Our holding does not foreclose the possibility that a statute may waive sovereign immunity without explicitly naming the State. The Legislature has provided two methods by which it may waive sovereign immunity, so we must give effect to the "plain, clear, and unmistakable" language of Minn. Stat. § 645.27. *See State v. Loge*, 608 N.W.2d 152, 156, 158 (Minn. 2000) (citing Minn. Stat. § 645.17 (2014)) (noting that we avoid interpreting statutes in a way that would create surplusage). We simply hold here that the language in Minn. Stat. §§ 181.64 and 181.65 is insufficient to satisfy the specific requirements of section 645.27.

We conclude that the Legislature did not demonstrate a plain, clear, and unmistakable intent to waive sovereign immunity for claims brought under Minn. Stat. §§ 181.64 and 181.65. We therefore affirm the court of appeals and remand to the district court for proceedings consistent with this opinion.

Affirmed.

11