*This opinion will be unpublished and may not be cited except as provided by Minn. Stat. § 480A.08, subd. 3 (2014).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A15-2080**

Joan Nichols,
Respondent,

v.

State of Minnesota, Office of the Secretary of State, et al.,
Appellants.

**Filed August 22, 2016
Reversed
Rodenberg, Judge**

Ramsey County District Court
File No. 62-CV-12-7326

Robert M. McClay, McClay and Alton, PLLP, St. Paul, Minnesota (for respondent)

Lori Swanson, Attorney General, Michael Goodwin, Assistant Attorney General, Kathryn A. Fodness, Assistant Attorney General, St. Paul, Minnesota (for appellants)

Considered and decided by Rodenberg, Presiding Judge; Peterson, Judge; and Bjorkman, Judge.

# U N P U B L I S H E D   O P I N I O N

**RODENBERG**, Judge

Appellants Office of the Minnesota Secretary of State (OSS), Mark Ritchie, and Beth Fraser challenge the district court's denial of their motion for summary adjudication of dismissal of respondent Joan Nichols's fraudulent-inducement claim on official-immunity grounds. We reverse.

**FACTS**

This case arises from Nichols's brief employment by OSS in 2012 as communications director. The basic facts underlying the dispute are set forth in our opinion in an earlier appeal. *Nichols v. State, Office of Secretary of State*, 842 N.W.2d 20, 28 (Minn. App. 2014), *aff'd*, 858 N.W.2d 773 (Minn. 2015).

Nichols's amended complaint alleged five counts including: (I) false inducement of employment, under Minn. Stat. §§ 181.64, .65 (2014); (II) common-law fraudulent inducement; (III) common-law fraudulent concealment; and (IV) promissory estoppel.[1] Nichols alleges that her duties after she was hired by OSS were inconsistent with the pre-hire representations made to her. Nichols contends that she would not have left other employment in Ohio to accept the position of communications director had she known the representations made to her were false.

Appellants moved to dismiss all of Nichols's claims for failure to state a claim upon which relief could be granted. Appellants argued that Minn. Stat. § 181.64 does not expressly or unmistakably apply to the state and that Nichols's common-law claims are therefore barred by sovereign immunity. The district court granted the motion in part, but denied summary judgment on the statutory cause of action for false inducement of employment, and the common law claims of fraudulent inducement and fraudulent concealment. Appellants appealed, and we reversed, holding that the state is immune from suit on a statutory claim of false inducement of employment. *Nichols*, 842 N.W.2d

---

[1] Nichols initially asserted other causes of action. We address only the claims advanced in the amended complaint.

2

at 28.  The Minnesota Supreme Court granted review, and affirmed.  *Nichols v. State, Office of Secretary of State*, 858 N.W.2d 773, 779 (Minn. 2015).

When the case returned to the district court on the remaining common-law counts, appellants moved for summary judgment on immunity grounds.  The district court summarily dismissed Nichols's common-law fraudulent-concealment and promissory-estoppel claims.  It denied the motion to summarily dismiss the common-law fraudulent-inducement claim, determining that genuine issues of material fact existed concerning misrepresentations about the nature of the communications director's relationship with the media.  The district court noted that the job description had stated that the communications director would "provide news media with information and answers to relevant questions" and that many of the interview questions asked of Nichols had specifically focused on her experience "dealing directly with the media."  The district court concluded that these representations and questions asked of Nichols arguably conflicted with job duties that had previously been assigned to Pat Turgeon, the assistant communications director.  The district court determined that a jury could reasonably find that Nichols's "actual duties were limited to internal communications policies rather than the external communications allegedly represented to her as part of her job.  Indeed, one of the reasons for Nichols's non-certification was her attempt to engage in external media communications against the direction of Fraser."  And the district court determined that this evidence is sufficient to overcome the motion to summarily dismiss Nichols's claims based on appellants' immunity defense.

3

The district court also reasoned that genuine issues of material fact existed concerning representations made in the job description and during the interview process about the communication director's responsibilities for organizing press conferences. Nichols claims that a large part of her second interview was dedicated to the press-conference issue, but that she later learned that Ritchie held press conferences only rarely. Turgeon's job description also provided that she would "coordinate and arrange for press conferences," and the record contains evidence that Turgeon arranged the only two press conferences that occurred during Nichols's employment.

Appellants appeal from the denial of their motion for summary judgment concerning the common-law fraudulent-inducement claims. No appeal is taken from the district court's summary dismissal of Nichols's other claims.

## D E C I S I O N

An order denying summary judgment is immediately appealable under the collateral-order doctrine when the motion is based on a claim of official immunity. *Gleason v. Metro. Council Transit Operations*, 582 N.W.2d 216, 218 (Minn. 1998). A court reviewing a denial of summary judgment determines de novo whether genuine issues of material fact exist. *Mumm v. Mornson*, 708 N.W.2d 475, 481 (Minn. 2006). A genuine issue of fact exists when the evidence permits "reasonable persons to draw different conclusions." *Frieler v. Carlson Mktg. Grp., Inc.*, 751 N.W.2d 558, 564 (Minn. 2008) (quotation omitted). The evidence is viewed in the light most favorable to the nonmoving parties, and all reasonable inferences are drawn in their favor. *Id.*

4

Appellants argue that the district court erred by concluding that genuine issues of material fact preclude summary judgment on Nichols's common-law fraudulent-inducement claim. Appellants contend that, as a matter of law, common-law official immunity applies and bars such a claim on this record.

The doctrine of common-law official immunity prevents public officials charged by law with duties which call for the exercise of "judgment or discretion from being held personally liable to an individual for damages." *Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 505 (Minn. 2006) (quotation omitted). The purpose of the doctrine is to enable public officials "to perform their duties effectively, without fear of personal liability that might inhibit the exercise of their independent judgment." *Mumm*, 708 N.W.2d at 490. The application of immunity is a question of law reviewed de novo, *Gleason*, 582 N.W.2d at 219, and "[t]he party asserting immunity has the burden of showing particular facts demonstrating an entitlement to immunity," *Meier v. City of Columbia Heights*, 686 N.W.2d 858, 863 (Minn. App. 2004), *review denied* (Minn. Dec. 14, 2004).

"Before we analyze the application of official immunity, we must first identify the precise governmental conduct at issue." *Mumm*, 708 N.W.2d at 490. The district court identified six areas in which Nichols's amended complaint identified that "her actual position deviated from the represented position": (1) Nichols's role in working with social media at OSS; (2) her role with the Minnesota Business Lien System; (3) her role in providing strategic advice to Ritchie; (4) her preparation of Ritchie and others for legislative testimony; (5) the description of the communication director's relationship with the media; and (6) her role in organizing press conferences.

Common-law official immunity does not protect officials from liability related to the exercise of ministerial duties, but extends only to officials performing discretionary functions. *Anderson v. Anoka Hennepin Indep. Sch. Dist. 11*, 678 N.W.2d 651, 655 (Minn. 2004). Conduct is discretionary if it requires "individual professional judgment that necessarily reflects the professional goal and factors of a situation." *Mumm*, 708 N.W.2d at 490-91 (quotation omitted). Official immunity extends to discretionary functions, except in the case of malicious or willful actions. *Rico v. State*, 472 N.W.2d 100, 106-07 (Minn. 1991).

The parties agree that all of the complained-of representations concerning the position were discretionary functions. Therefore, whether official immunity applies depends on whether there is a genuine issue of material fact concerning the existence of willful or malicious conduct by appellants.

Malice has been defined as "the intentional doing of a wrongful act without legal justification or excuse, or . . . the willful violation of a known right." *Id*. (quotation omitted). In the context of official immunity, an official acts with malice by intentionally committing an act that he or she has reason to believe is legally prohibited. *Id*. Generally, the existence of malice is a question of fact decided by the jury. *Kelly v. City of Minneapolis*, 598 N.W.2d 657, 664 n.5 (Minn. 1999). But when there is no genuine issue of material fact, malice may be decided as a matter of law. *See Vassallo ex rel. Brown v. Majeski*, 842 N.W.2d 456, 465 (Minn. 2014) (deciding existence of malice as a matter of law because undisputed facts established defendant did not maliciously violate a known right of plaintiff). The Minnesota Supreme Court has

6

established a high standard for a finding of a willful or malicious wrong in the context of common law official immunity, by requiring the defendant to have reason to know that the challenged conduct is prohibited . . . . The exception anticipates liability only when an official intentionally commits an act that he or she then has reason to believe is prohibited.

*Anderson*, 678 N.W.2d at 662 (quotation omitted).

The district court found that a fair inference exists that the description of the communications director's relationship with the media and role in organizing press conferences amounted to fraudulent misrepresentations by appellants. It concluded that the remaining four identified actions of appellants were, as a matter of law, not malicious or willful, a conclusion with which Nichols takes no issue on appeal. Appellants, citing *Kelly*, argue that the district court failed to identify a "clearly established law or regulation" prohibiting their conduct. 598 N.W.2d at 663; *see also Rico*, 472 N.W.2d at 107.

Fraudulent inducement is an intentional tort. *See Stowman v. Carlson Cos.*, 430 N.W.2d 490, 492 (Minn. App. 1988) ("To establish fraudulent inducement, [a plaintiff] must establish that [a defendant] falsely represented or omitted a material fact that was susceptible of knowledge *with the intent of* inducing him to act . . . [and plaintiff] must have justifiably relied on the representation or omission and suffered damages as a proximate result of that reliance.") (emphasis added). The district court relied on *LeBaron v. Minnesota Board of Public Defense* to support its determination that summary judgment based on appellants' official immunity claim was inappropriate because, generally, the "willful and intentional nature" of the tort of fraudulent

7

inducement establishes malice if the elements of the tort are proved. 499 N.W.2d 39, 41 (Minn. App. 1993), *review denied* (Minn. June 9, 1993); *cf. Kelly*, 598 N.W.2d at 663. Because the district court concluded that there remained genuine and material issues of fact on the issue of whether appellants committed the tort of fraudulent inducement, it also concluded that official immunity did not, as a matter of law, bar Nichols's claims.

Appellants argue that Nichols has failed to allege sufficient facts supporting her fraudulent-inducement claim to overcome appellants' official immunity. We examine each of Nichols's factual claims in turn.

*Communication with the media*

Nichols alleges that appellants misrepresented the communications director's responsibility for communication with the media. At oral argument, Nichols's counsel pointed to the language in the job description, which states that one of the communications director's "primary duties" is "providing news media with information and answers to relevant questions." Nichols testified in deposition that she had never heard of a communications director who was not the "primary contact" for media relations. She also points to questions asked of her during her second interview suggesting that she would be the "primary contact." Nichols alleges that she would not have accepted the position had she known that Turgeon was and would remain the primary media contact.

Nothing in the job description for the communications-director position identifies that the director was to have *primary* responsibility for contacting the media, or that the director would *directly* provide "news media with information and answers." Moreover,

appellants point to undisputed evidence in the record that Nichols actually provided advice, information, and answers to media inquiries through Turgeon during her six weeks of employment with the OSS. The interview question posed to Nichols during the interview, and on which Nichols relies, was: "One of the key tasks for the communications director is *advising the Secretary and the staff on whether and how to respond to a story in the media. . . .* What has been your experience dealing directly with the media and advising others in their responses?" (Emphasis added.) The interview question, when read in full, is preceded by the statement that the director would be "advising the Secretary and the staff" concerning media responses. Assuming without deciding that an interview question can amount to a representation for purposes of a common-law fraudulent-inducement claim, nothing in this particular question represents that the communications director was to have the responsibility to directly address media questions. Our careful de novo review of the record reveals no evidence of a representation to Nichols that she would have direct contact with the media. Because the record reflects no genuine issues of material fact concerning the communication director's responsibility for communicating with the media, the record supports neither a fact question concerning fraudulent inducement nor a fact question concerning any willful or malicious conduct by appellants regarding communication with the media.

*Press conferences*

Nichols also argues that appellants misrepresented her role in organizing press conferences. Nichols claims that she was not told until she started her position either that

9

Ritchie did not often hold press conferences or that Turgeon would be primarily responsible for coordinating and arranging for press conferences.

Here again, nothing in the record supports the claim that appellants promised Nichols that she would be solely, or even primarily, responsible for organizing press conferences, or that appellants made any representations about the frequency with which OSS would conduct press conferences. The job description provided only that the position involved "organizing press conferences." The undisputed evidence in the record shows that Nichols did assist Turgeon in organizing the press conferences. Because the record reflects no genuine issue of material fact concerning the communication director's responsibility for organizing press conferences, the district court erred in denying summary judgment on this basis. There being no fact issue concerning any misrepresentation of the position, there likewise can be none concerning willful or malicious conduct by appellants. The claim is therefore barred by official immunity.

### *Vicarious official immunity*

"Vicarious official immunity protects a governmental entity from liability based on the acts of an employee who is entitled to official immunity." *Dokman v. Cty. of Hennepin*, 637 N.W.2d 286, 297 (Minn. App. 2001), *review denied* (Minn. Feb. 28, 2002). Appellants' conduct is, as a matter of law, protected by common-law official immunity. Therefore, appellants are entitled to vicarious official immunity.

**Reversed.**